**COX ROCK PRODUCTS, Plaintiff and Respondent,**

v.

**WALKER PIPELINE CONSTRUCTION, and Balboa Insurance Company, Defendants and Appellants.**

No. 860055–CA.

Court of Appeals of Utah.

May 11, 1988.

Ronald E. Kunz, Midvale, for defendants and appellants.

Paul R. Frischknecht, Manti, for plaintiff and respondent.

Before ORME, JACKSON and BENCH, JJ.

## OPINION

ORME, Judge:

Appellants Walker Pipeline Construction and Balboa Insurance Company seek reversal of the trial court judgment in favor of Cox Rock Products. We reverse and remand.

### FACTUAL BACKGROUND

Walker Pipeline Construction was Ephraim City's general contractor for a construction project. Walker subcontracted with Neeley–Western to perform the asphalt patching work called for in the contract. Neeley–Western purchased the asphalt necessary to complete its work from Cox Rock Products. All such purchases were made in October of 1982.

Subsequently, Ephraim City, which apparently had no complaint about the materials, rejected the work performed by Neeley–Western and refused to pay for the defective work. Neeley–Western, in turn, did not pay Cox Rock and subsequently filed a petition in bankruptcy.

Sometime during December 1982, Cox Rock made demand on Walker, the general contractor, for payment for the asphalt. Walker claimed that because the laying of asphalt had been rejected as unsatisfactory by Ephraim City, Walker was not in a position to pay Cox Rock.

Cox Rock ultimately commenced this action against Walker and Balboa Insurance Company, which allegedly had posted a bond assuring payment of Walker's subcontractors and others involved in the project. An initial trial resulted in judgment favorable to appellants. Following a new trial, the court concluded that Cox Rock had given Walker notice sufficiently in compliance with the payment bond statutory provisions which the court considered applicable. It accordingly awarded judgment to Cox Rock.

Appellants have several complaints about the trial court's decision. We agree with their principal contention, namely that the statutes relied on by Cox Rock and the trial court were not in effect at the relevant times, and have no occasion to reach the other issues. Our conclusion is best understood against the background of the relevant statutory history.

### MECHANICS' LIENS AND PAYMENT BONDS

Ordinarily, one who is not in "privity" with another cannot sue that party to recover on a contract. See J. Calamari and J. Perillo, *Law of Contracts* § 243 at 378 (3d ed. 1973). However, to protect construction suppliers and subcontractors from the harshness of that doctrine, two principal devices have been created—the mechanic's lien and the payment bond.

The purpose of the mechanic's lien law, Utah Code Ann. §§ 38–1–1 to –26 (1974), is to preclude landowners from having their

lands improved by others, without becoming personally responsible for the reasonable value of materials and labor. *See Calder Bros. Co. v. Anderson,* 652 P.2d 922, 924 (Utah 1982). "The purpose of the mechanics' lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor." *Id.* However, subcontractors and suppliers are precluded under the mechanic's lien statute from placing a lien on "any public building, structure or improvement." Utah Code Ann. § 38-1-1 (1974). Therefore, suppliers and subcontractors have principally looked for protection to the second device, namely that of the payment bond, when providing labor or supplies for construction projects contracted for by governmental entities.

There are presently two statutorily required payment bonds: those required for public improvement projects and those required for private construction contracts. Utah Code Ann. § 14-2-1 (1987) requires that property owners who contract for construction work exceeding $2,000 shall obtain from the general contractor a payment bond assuring subcontractors and suppliers will be paid even if the general contractor defaults. If the owner fails to require that such a bond be posted and the contractor defaults in paying subcontractors and suppliers, the latter have a right of action against the owner. *See* Utah Code Ann. § 14-2-2 (1987). As explained in the next section, separate statutory provisions have imposed similar requirements where public contracts for construction are concerned. "This statutory protection is necessary because contractors often are poor credit risks and because the subcontractors are prevented by law from holding a lien on a public building." *Utah Legislative Survey-1983,* 1984 Utah L.Rev. 115, 127 n. 79.

In this case, Cox Rock was not paid by Neeley–Western, which ended up in bankruptcy court. Walker, the general contractor, refused to pay since the city had rejected that part of the project. Cox Rock was precluded from filing a mechanic's lien since the project involved a "public improvement" contracted for by the city. That left Cox Rock with these apparent options: sue the city if it had failed to require Walker to post a suitable bond or sue on the bond if one had been posted. Cox Rock determined that a bond was posted and commenced this action. However, Cox Rock's cause of action arose in 1982, during a time when, as explained in the next section, no statute was in effect establishing a requirement for payment bonds in connection with public projects undertaken by municipalities. Without such a statute, Cox Rock was not entitled to judgment.[1]

## THE RISE AND FALL (AND RISE) OF THE "LITTLE MILLER ACT"

It appears that the original Utah law on the subject was enacted just after the turn of the century. 1909 Utah Laws ch. 68, § 1. In 1963, that law, as amended, was repealed and substitute legislation, based on the federal Miller Act, 40 U.S.C. §§ 270a–270d, was enacted. 1963 Utah Laws ch. 15. This legislation, sometimes referred to as the "Little Miller Act," provided in part:

> Before any contract for the construction, alteration, or repair of any public building or public work or improvement of the State of Utah, or of any county, city, town, municipal corporation, township, school district, public educational institution, or other political subdivision, ... is awarded to any person, he shall furnish ... bonds [including a payment bond]

---

1. Of course, even if the city was not statutorily required to see to it that a bond was posted but chose to have one posted anyway, Cox Rock would be entitled to payment in accordance with the terms of the bond itself. *Smith v. Bowman,* 32 Utah 33, 88 P. 687, 689 (1907). *Cf. Shelter America Corp. v. Ohio Casualty & Ins.,* 745 P.2d 843, 846 (Utah Ct.App.1987) (where bond actually posted provides greater protection than statute mandates, bond provisions control). However, the bond was not in evidence. At trial, Cox Rock relied directly on the perceived statutory requirements for payment bonds in support of its claim. With no alternative basis for the judgment available, if the judgment cannot be sustained on statutory grounds, it cannot be sustained at all.

which shall become binding upon the award of the contract. . . .

1963 Utah Laws ch. 15, § 1 (codified at Utah Code Ann. § 14-1-5 (1973) (repealed in 1980)). In essence, general contractors who contracted to do public improvement work for cities and other public entities were required to post a payment bond to protect their subcontractors and suppliers. If the public entity failed to require the contractor to do so, it would be liable to the subcontractors and suppliers. 1963 Utah Laws ch. 15, § 3. For two decades, the law remained largely unchanged and those affected—government, contractors, suppliers, and subcontractors—followed its terms as a matter of habit, apparently even after the statute was repealed.

In 1980, the Legislature made a largely successful attempt to "simplify, clarify and modernize" the law governing all aspects of procurement by the state, Utah Code Ann. § 63-56-1 (1986), with the enactment of the Utah Procurement Code. 1980 Utah Laws ch. 75 (codified at Utah Code Ann. §§ 63-56-1 to -73 (1986)). The Utah Procurement Code contained among its numerous provisions on everything from competitive bidding to required contractual causes, see Utah Code Ann. §§ 63-56-20, -40 (1986), a provision requiring that, upon award of a construction contract, a payment bond in an amount equal to 100% of the price specified in the contract "be delivered to the state." Utah Code Ann. § 63-56-38(1)(b) (1986).

The Legislature determined that a variety of enactments inconsistent with or duplicative of the provisions of the procurement code should be repealed simultaneously with enactment of the code. See 1980 Utah Laws, ch. 75, § 5. Apparently in view of the elaborate provision in the code concerning payment bonds, the Legislature repealed the "Little Miller Act." See id.

The problem with this approach was that the new procurement code applied to considerably fewer public entities than had the

"Little Miller Act." That act had applied to a long list of entities, specifically including cities. See 1963 Utah Laws ch. 15, § 1. By contrast, the procurement code applied to state agencies only, see Utah Code Ann. § 63-56-2(2) (1986), except that some few provisions, including those concerned with payment bonding, also applied to "local procurement units." Utah Code Ann. § 63-56-2(3) (1986). However, the term "local procurement unit" did not include municipalities. See Utah Code Ann. § 63-56-5(12) (1986).

In due course the resulting gap in statutory coverage was discovered and, in 1983, payment bond requirements were reenacted for public contracts in Title 14, 1983 Utah Laws ch. 61, §§ 1-5 (codified in Utah Code Ann. §§ 14-1-13 to -17 (1986)), and made applicable to public entities not covered by the procurement code.[2] 1983 Utah Laws ch. 61, § 5. But between 1980 and 1983, there was no statutory requirement for the posting of payment bonds in connection with the construction projects of a host of public entities, including municipalities. Cox Rock's claim arose in 1982, while this gap existed.

### OF LEGISLATIVE INTENT AND PLEADING

Cox Rock advances two main reasons why it should escape reversal notwithstanding the foregoing. First, we are urged to examine the legislative intent and conclude that the statutory gap was inadvertently created, was never intended, and can therefore be judicially ignored. Second, it is suggested that the case should be decided as though the procurement code's payment bond provisions did apply since Walker and Balboa admitted as much.

■ It is arguable that the Legislature did not really mean to exempt cities from the requirement of having to post a payment bond. Utah Legislative Survey-1983, 1984 Utah L.Rev. at 128 n. 84. However, in repealing the 1963 act, which ap-

---

**2.** The Legislature apparently was unsatisfied with this approach and again made a change in 1987. The 1983 act, Utah Code Ann. §§ 14-1-13 to -17 (1986), was repealed and §§ 14-1-18, -19 were enacted in their place. 1987 Utah Laws

ch. 218 §§ 1, 2, 13. These provisions had the effect of subjecting cities and other entities not otherwise subject to the procurement code to the code's payment bond requirements.

plied to cities, and expressly excluding cities from the applicability of the procurement code, there exists no ambiguous language or inconsistency which the court must interpret or construe to explain its exact meaning. "We will interpret and apply [a] statute according to its literal wording unless it is unreasonably confused or inoperable." *Gleave v. Denver & Rio Grande Western R.R. Co.*, 749 P.2d 660, 672 (Utah Ct.App.1988).

Since the language is clear, and only one meaning can be derived from an express exclusion, it is not appropriate to look to legislative history. "There is nothing to construe where there is no ambiguity in the statute." *State v. Archuletta*, 526 P.2d 911, 912 (Utah 1974). *See Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n*, 107 Utah 502, 505, 155 P.2d 184, 185 (Utah 1945) (statutory interpretation "must be based on the language used, ... and the court has no power to rewrite a statute to make it conform to an intention not expressed").

 As to Cox Rock's argument about the effect of appellants' pleading, although appellants admitted in their answer that a bond for payment had been furnished, they did not admit liability on the bond. The applicability of the Utah Procurement Code was not alleged by Cox Rock, much less expressly admitted by appellants. However, appellants alleged by way of affirmative defense that Cox Rock had failed to comply with the notice requirements of the procurement code's payment bond provisions, specifically citing Utah Code Ann. § 63–56–38 (1986), which surely suggests that they thought the code applied. Although appellants offer up the doctrine permitting pleading in the alternative, the simple fact is that at the initial trial, in debating Cox Rock's request for a new trial, and even at the new trial, appellants conducted their case as though the procure-

ment code applied and even premised their main defense on the notice requirements of the code's payment bond provisions. Appellants have raised for the first time on appeal the inapplicability of the procurement code.[3] Ordinarily, arguments, positions, and issues may not be raised for the first time on appeal. *See, e.g., Bangerter v. Poulton*, 663 P.2d 100, 102 (Utah 1983); *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 637 n. 2 (Utah Ct.App.1987). That doctrine is not, however, applied in a vacuum. Where some countervailing principle is to be served, the doctrine must occasionally yield. *See, e.g., Buehner Block Co. v. UWC Assocs. v. Home Sav. & Loan*, 752 P.2d 892, 894–95, (Utah 1988).

This is such a case. While parties are ordinarily bound by the logical results of their pleadings and trial positions, such devices cannot be used to enlarge the scope of legislation beyond that determined by the Legislature. *Cf. Robbins v. Sonoma County Flood Control & Water Cons. Dist.*, 138 Cal.App.2d 291, 292 P.2d 52, 56 (1956) ("[A] pleading must be tested, not by what it says as to the effect of [public laws and public acts], but by the contents of the laws and acts themselves."). Very simply, if the Legislature excludes municipalities from the procurement code's provisions, private litigants are not free to pretend that the situation is otherwise and obtain an adjudication of their rights as though inapplicable legislation applied.

While appellants therefore escape affirmance notwithstanding their belated discovery of the procurement code's inapplicability, they cannot escape responsibility for the prejudice to Cox Rock that might have resulted from their pretrial and trial conduct. As noted previously, Cox Rock did not have the payment bond placed into evidence. *See* Note 1, *supra*. It may be that its decision in this regard was materi-

---

**3.** Appellants have no monopoly on inconsistency in their position about what statutory scheme governs. At trial, Cox Rock persuaded the trial court to award attorney fees pursuant to Utah Code Ann. § 14–1–16, until appellants pointed out that that provision had not been enacted until 1983, whereupon the court premised that award on Utah Code Ann. § 14–1–8, which had been repealed in 1980 with enactment of the procurement code. If either of those provisions applied, the procurement code would not. The applicability of these provisions was nonetheless urged by Cox Rock, who on appeal urges applicability of the procurement code's payment bond provisions while hoping to shift the basis for its attorney fee award to trial court discretion.

ally influenced by appellants' apparent agreement that the procurement code's payment bond provisions applied. If, on remand, the trial court determines that such is the case, it may receive the bond into evidence and conduct such other proceedings as may be appropriate to supplement the testimony previously received and enter its judgment accordingly. If instead the court concludes that the bond was not offered due to oversight, unavailability, trial strategy, or the like, then further proceedings will not be appropriate.

## CONCLUSION

If Cox Rock's cause of action had arisen before 1980 or after 1983, the kind of statutory scheme both it and the trial court considered applicable would have applied and the judgment in Cox Rock's favor would perhaps be sustainable. As matters stand, and since the alleged bond itself was not in evidence, there is simply no legal basis for judgment in its favor. The judgment is accordingly reversed. However, the case is remanded for such further proceedings as are appropriate in accordance with the preceding paragraph of this opinion. The parties shall bear their own costs of this appeal.

JACKSON and BENCH, JJ., concur.