**MEL TRIMBLE REAL ESTATE,**
Plaintiff and Appellant,

v.

**MONTE VISTA RANCH, INC.** and Wallace Ohran, Ray E. Nelson, Howard D. Sherwood, et al., Defendants and Respondents.

No. 860135–CA.

Court of Appeals of Utah.

July 8, 1988.

Rehearing Denied Aug. 3, 1988.

See also 626 P.2d 453.

David M. Jorgensen, Robert J. DeBry (argued), Robert J. DeBry & Associates, Salt Lake City, for plaintiff and appellant.

Robert L. Jeffs, M. Dayle Jeffs (argued), Jeffs & Jeffs, Provo, for defendants and respondents Monte Vista Ranch, Inc.

Before ORME, GARFF and JACKSON, JJ.

## OPINION

ORME, Judge:

In an earlier case, Mel Trimble Real Estate and its agent sued Leland Fitzgerald for a real estate sales commission allegedly owed. Trimble was unsuccessful in that action and the Utah Supreme Court affirmed in *Mel Trimble Real Estate v. Fitzgerald*, 626 P.2d 453 (Utah 1981). Trimble then brought this action to recover the commission against Monte Vista Ranch, Inc., which contracted to sell the property to Fitzgerald, and its shareholders. Monte Vista's motion for summary judgment was granted on res judicata grounds. Trimble appeals from the lower court's grant of the motion for summary judgment. We affirm.

## FACTS

In 1977, Monte Vista's president, Wallace Ohran, engaged Trimble to sell Monte Vista's ranch property located in Cedar Valley, Utah. Ohran orally agreed that Monte Vista would pay Trimble a 6% sales commission. Trimble located a buyer, Fitzgerald, who negotiated with Monte Vista regarding the purchase price. Initially, Monte Vista offered to sell the ranch for $2,000,000 and to pay Trimble's commission. The final offer, to which Fitzgerald agreed, included a reduction in price to $1,875,000, on the condition that Fitzgerald would pay Trimble's commission. An earnest money agreement, which both Monte Vista and Fitzgerald signed, stated that the "[b]uyer [was] to be responsible for all real estate commissions." However, it did not specify how much Trimble was to be paid or the terms of payment. Trimble was not a party to the earnest money agreement.

The ranch was Monte Vista's major asset and, for tax purposes, Fitzgerald ultimately agreed to a transfer of corporate stock instead of a transfer of the title to the property itself. Accordingly, Monte Vista's shareholders entered into a stock sale agreement with Fitzgerald. The stock sale agreement contained an integration clause which explicitly stated that this subsequent agreement "constitutes the entire agreement among the parties" and "supersedes all prior agreements." The stock sale agreement was silent on the issue of commissions.

A dispute ensued as to whether Fitzgerald's earlier agreement to pay Trimble the commission was still in effect or whether it had been agreed instead that Trimble could buy part of the ranch on favorable terms in lieu of a commission. Trimble declined to purchase any part of the ranch and demanded a cash commission. Fitzgerald paid $5000 toward Trimble's commission but refused to pay more. Trimble then sued Fitzgerald on the ground that it was a third party beneficiary of the earnest money agreement. In that action, a jury concluded that Fitzgerald did not owe anything to Trimble and the trial court's decision based on the verdict was upheld by the Utah Supreme Court in *Mel Trimble Real Estate v. Fitzgerald*, 626 P.2d 453 (Utah 1981).

Following the conclusion of the litigation against Fitzgerald, Trimble filed this suit against Monte Vista and its former shareholders alleging breach of contract and the right to recover the balance of the unpaid commission. The five named shareholders filed a motion to dismiss, which was denied. Monte Vista moved for summary judgment on a number of grounds, including res judicata and collateral estoppel, and attached to its supporting memorandum a copy of the Utah Supreme Court opinion affirming the judgment in the prior trial. The former shareholders joined in the motion.

The entirety of Trimble's opposition to the summary judgment motion, insofar as premised on res judicata and collateral estoppel, consisted of a single paragraph disputing, in conclusory terms, Monte Vista's argument that the question of whether *any* commission was owed to Trimble had been litigated in the first action and decided adversely to Trimble. The district court

granted the motion for summary judgment, albeit originally on only statute of limitations grounds. For reasons which are not altogether clear, the resulting judgment was set aside.

The motion for summary judgment, insofar as premised on other grounds, was then resubmitted. Additional memoranda were submitted and the motion orally argued, but Trimble offered no other information relative to the res judicata issue. The court issued a memorandum decision determining that the action was precluded on res judicata grounds. In making its decision, the court relied, as had the parties, exclusively on the Supreme Court's reported decision in the earlier case.

Trimble's appeal is premised on several grounds, which we regard as raising three points. First, even if it was appropriate for the district court to decide the res judicata question with reference only to the Supreme Court's opinion, it erred in finding in that opinion any basis for concluding that the commission issue raised in the present action had already been decided adversely to Trimble. Second, the district court should not have looked just to the opinion but should have scrutinized the pleadings and papers in the first action to see what issues were actually litigated and how they were decided. Third, this court should, in any event, take judicial notice of the pleadings and papers in the prior action in evaluating the propriety of the district court's decision in this case. Before turning to consider these issues, we pause briefly to review the doctrine of res judicata.

## I. RES JUDICATA AND COLLATERAL ESTOPPEL

The doctrine of res judicata reflects the refusal of courts to tolerate pointless litigation and is based on the premise that the proper administration of justice is best served by limiting parties to one fair trial of an issue or cause. 46 Am.Jur.2d *Judgments* § 395 (1969). "[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, con-serve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

■ The doctrine of res judicata has two separate but related branches which can be asserted as affirmative defenses. *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d 873, 874–75 (Utah 1983); *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 389 (Utah Ct.App.1987). The first branch, now known as claim preclusion but referred to previously as "pure" res judicata, bars the relitigation by the parties or their privies of a claim for relief previously resolved by a final judgment on the merits. *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d at 875. *See, e.g., Braselton v. Clearfield State Bank*, 606 F.2d 285, 287 (10th Cir.1979). "The same rule also prevents relitigation of claims that could and should have been litigated in the prior action but were not." *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d at 875. Under claim preclusion, the judgment is final and serves as the full measure for relief to be accorded between the same parties on the same claim or cause of action. 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1977).

■ The second branch of res judicata is collateral estoppel, or issue preclusion. Under this doctrine, the relitigation of factual issues that have once been litigated and decided is precluded even if the claims for relief in the two actions are different, *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d at 875, and even if only "the party *against whom* the doctrine is asserted was a party or in privity with a party to the prior adjudication." *Copper State Thrift & Loan v. Bruno*, 735 P.2d at 390 (emphasis in original). This case turns on application of the collateral estoppel doctrine since Monte Vista and its shareholders were not parties to the prior action but, rather, contend the issue of whether any commission was owed had been litigated in that action and decided adversely to Trimble, who was a party to the prior action.

In *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978), the Utah Supreme Court outlined the following test to determine whether collateral estoppel applies:

1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2) Was there a final judgment on the merits?

3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4) Was the issue in the first case competently, fully, and fairly litigated?

If all four elements of the test are satisfied, collateral estoppel bars relitigation of the same issue. In this case, Trimble, the party against whom the commission issue was allegedly decided, was a party to the prior action and that action resulted in a final judgment on the merits adverse to Trimble. It remains to be seen whether the other two elements of the test were satisfied, i.e., whether the pertinent factual issue decided in the prior action is identical to the key issue in this case and whether it had been actually litigated.

## II. SUPREME COURT OPINION

The district court premised its collateral estoppel conclusions strictly on the Supreme Court's opinion in the prior action. According to the opinion, the Supreme Court reviewed the trial transcript and determined that the litigants enjoyed a "fair and full trial, without prejudicial error." *Mel Trimble Real Estate v. Fitzgerald*, 626 P.2d at 455. Trimble's theory at trial was that Fitzgerald owed Trimble a monetary commission in the amount of $125,000. *Id.* at 454. According to the opinion, the trial court had occasion to determine "as a matter of law" that the "agreement ... imposed upon [Fitzgerald] the liability for the real estate commission, if any, owed

[Trimble] upon this transaction." *Id.* at 455.

Trimble's contention on this appeal that the trial court's "as a matter of law" ruling was really not one or was entirely gratuitous, is simply not persuasive, at least when the opinion is considered by itself. It is surely appropriate to conclude the trial court would not have ruled that *if* any commission were owed it was owed by Fitzgerald, unless that question had been presented and litigated. From all that appears in the Supreme Court opinion, the jury's judgment that Fitzgerald did not owe a commission means that Trimble was not entitled to a commission at all—and that collateral estoppel would properly bar this action to recover such a commission.[1]

## III. RECOURSE TO RECORD IN PRIOR ACTION

Trimble argues, however, that the Supreme Court opinion is misleading and that the district court in the instant proceeding should not have decided the collateral estoppel question based solely on the opinion. Trimble contends that it is difficult to make a determination that the issue was actually litigated and decided from the four corners of the opinion. We tend to agree. Close examination of the record in a proceeding may well lead to a conclusion somewhat at odds with the apparent "plain meaning" of a reported decision. *See, e.g., Halladay v. Cluff*, 739 P.2d 643 (Utah Ct.App.1987). Trimble argues on appeal that the district court in this case should have examined the record from the first proceeding as this examination would show that Trimble's second complaint raised new causes of action based on facts which had not been actually litigated and which did not depend for its success on any factual issues decided adversely to Trimble in the first action.

The strongest support for Trimble's position is *Parrish v. Layton City Corp.*, 542

---

1. Trimble's decision not to join Monte Vista or its shareholders in the action it commenced against Fitzgerald tends to suggest Trimble knew that, aside from whatever commissions other parties might owe, no commission was owed by Monte Vista or its shareholders. Where a party has a claim against one or more from among several parties, it is customary to join all of those parties in a single action and leave the factfinder to determine which of them actually is liable. That practice also saves "the parties and the judicial system considerable time and money." *Serr v. Rick Jensen Constr., Inc.*, 743 P.2d 1202, 1204 (Utah 1987).

P.2d 1086 (Utah 1975), where the Court stated: "Since the record of the prior action was not before the trial court, there is no basis to sustain the determination that plaintiff's claim was barred by the doctrine of res judicata." *Id.* at 1087. However, *Parrish* is readily distinguishable from the case at hand because the trial court in *Parrish,* without the record of the prior proceeding, had absolutely no basis for determining the res judicata issue.[2] By contrast, in the instant case the Supreme Court opinion provides a basis upon which the district court could determine that collateral estoppel barred the instant action.

As we see it, once Monte Vista submitted to the district court a copy of the Supreme Court opinion, which on its face showed that the key issue had been litigated and decided, the burden shifted to Trimble, if it believed more than the opinion was needed to make a fully informed decision, to produce the record of the prior proceeding, urge the court to take judicial notice of it, or otherwise show that the opinion should not be taken at face value. Instead, Trimble limited its resistance to arguing how the Supreme Court opinion should actually be construed and to the doctrinal requirements of collateral estoppel. An analogous situation is when an affidavit is submitted to the court in support of a motion for summary judgment. If the resisting party believes the affidavit is inaccurate or incomplete, that party may move to strike it or may submit a counteraffidavit. But if that party limits its response to arguing what the facts in movant's affidavit mean and to legal arguments, the court will rightly conclude that its disposition may properly turn on the affidavit which was submitted. The trial court in this case was likewise led to believe that the opinion was all that it needed to decide the collateral estoppel aspect of the motion for summary judgment.

Trimble's argument that the court should not have decided the motion without review of the record in the prior proceeding must additionally be rejected for the reason that that issue was never raised before the trial court and is raised for the first time on appeal, *see, e.g., Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 657 (Utah 1988), an issue revisited in the next section.

## IV.  JUDICIAL NOTICE

Finally, Trimble argues that the rule on judicial notice permits—or even requires— this court to take notice of the record in the first proceeding and to evaluate the district court's decision in light of what the record actually shows. This issue is a difficult one, as Utah R.Evid. 201 does not explicitly allow or prohibit the taking of judicial notice for the first time on appeal.

Rule 201, which governs judicial notice of adjudicative facts,[3] provides in subsection (c) that "[a] court may take judicial notice, whether requested or not." However, under subsection (d) a court is *required* to

---

2. *Parrish* was a 3–2 decision. It turned on a lack of compliance with rules of evidence and procedure "by which a judicial record may be proved." *Parrish v. Layton City Corp.,* 542 P.2d at 1087. The dissenters pointed out that, absent a transcript on appeal, the court should presume the judge had the appropriate records before him since appellant had the burden of proving otherwise. *Id.* at 1089 (Ellett, J., dissenting). *Parrish* was referred to in dicta in *Searle Bros. v. Searle,* 588 P.2d 689, 692 (Utah 1978), as support for the proposition that the trial court should not have decided the applicability of res judicata doctrines without independently examining the record of the prior litigation. *Searle* was also a 3–2 decision and, interestingly, the author of the *Parrish* majority opinion joined the dissent.

   We do not read *Parrish* and *Searle* as imposing an affirmative obligation on the court to independently consider the record in the prior litigation, regardless of the procedural posture in which a collateral estoppel issue arises and the position taken and tactics adopted by the resisting party. Such a requirement would be especially inappropriate in a case like this, where both parties' handling of the summary judgment motion clearly suggested that the collateral estoppel question could be properly decided by reference to some other source, namely the reported Supreme Court opinion.

3. This rule is the federal rule, verbatim. *See* Advisory Committee Note, Utah R.Evid. 201. The rule " 'governs only judicial notice of adjudicative facts,' and does not deal with instances in which a court may notice legislative facts, which is left to the sound discretion of trial and appellate courts." *Id. See* Utah R.Evid. 201(a).

"take judicial notice if requested by a party and supplied with the necessary information." Moreover, the rule specifically provides in subsection (f) that "[j]udicial notice may be taken at any stage of the proceeding."

Trimble argues that since it has requested this court to take notice of the proceeding and has supplied us with the "necessary information," we are obligated to take judicial notice since notice may be taken at "any stage of the proceeding." This argument is plausible, *see* 21 C. Wright & K. Graham, Federal Practice and Procedure § 5110 at 525 (1977), but creates a dilemma. "Where the issue of judicial notice is raised for the first time on appeal, the appellate court is faced with a conflict between the policy that decisions ought not to run contrary to indisputable facts and the procedural policy that prohibits a party from raising issues on appeal that were not raised below." *Id. See People v. Bush,* 37 Cal.App.3d 952, 112 Cal.Rptr. 770 (1974) (under California Evidence Code § 459, court cannot take notice for first time on appeal of a matter not noticed below in order to permit a party to assert a legal theory not presented to the trial court). *See also Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d at 657.

We agree that the better interpretation limits *mandatory* judicial notice to the trial court. *See* 21 C. Wright & K. Graham, Federal Practice and Procedure § 5110 at 525 (1977). *See also Holbrook v. Carter,* 19 Utah 2d 288, 431 P.2d 123, 125 (1967). It remains to be decided whether we should take judicial notice of the record in the prior proceeding for the first time, as a matter of discretion.

For us to take notice of the record in the first proceeding would permit the concept of judicial notice to be used to get around the rule precluding raising issues for the first time on appeal. Utah courts have consistently followed a policy strongly opposed to the raising of issues for the first

time on appeal. *See, e.g., Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 654 (Utah 1988) (rule applies even where facts are not disputed and issue raised is one of law); *Bangerter v. Poulton,* 663 P.2d 100, 102 (Utah 1983); *James v. Preston,* 746 P.2d 799, 801 (Utah Ct.App. 1987); *Ebbert v. Ebbert,* 744 P.2d 1019, 1023 (Utah Ct.App.1987). There are only very limited exceptions to that sound policy. One such exception allows an appellate court to affirm trial court decisions on proper grounds other than those which the trial court cited in making its decision. *Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 894–95 (Utah 1988).[4] Another limited exception exists when to do otherwise would permit deviation from a legislative scheme. *Cox Rock Products v. Walker Pipeline Constr.,* 754 P.2d 672, 676 (Utah Ct.App.1988). We see no compelling "countervailing principle" to be served by making an exception in this case, *see id.,* even though under Rule 201 we would have the power to take judicial notice for the first time and, indeed, might do so in an appropriate case. *See* Note 4, *supra.* We therefore decline to take notice of the record in the prior proceeding for the purpose of looking behind the Supreme Court's opinion and evaluating the district court's decision in light of information not presented to it.

## CONCLUSION

A plain reading of the Supreme Court's opinion in the earlier case shows that Trimble's claim to any commission has already been litigated and decided adversely to Trimble. Since the parties all but conceded that the opinion alone would permit the district court to make an informed decision on the applicability of collateral estoppel, the trial court did not err in failing to review the record of the prior proceeding on its own motion. It is not mandatory that we take notice of the record in that

**4.** Under *Buehner Block,* it might be appropriate to take notice for the first time on appeal if doing so would permit *affirmance. Cf.* 21 C. Wright & K. Graham, Federal Practice and Procedure § 5110 at 525 (1977) ("most facts that are noticed for the first time on appeal will undoubtedly be noticed in order to avoid a reversal"). However, we are asked here to notice matters not raised before the trial court for the purpose of *reversing* the trial court.

proceeding for the first time on appeal, and we decline to do so as a matter of discretion in view of the strong policy in this state against consideration of arguments and issues for the first time on appeal. The judgment appealed from is accordingly affirmed.

GARFF and JACKSON, JJ., concur.