941 P.2d 636 (1997)
MACRIS & ASSOCIATES, INC., Plaintiff and Appellee,
v.
IMAGES & ATTITUDE, INC., a Utah corporation; and Thomas Mower, an individual, Defendants and Appellants.
No. 960218-CA.
Court of Appeals of Utah.
June 19, 1997.
*637 Dennis K. Poole and Andrea Nuffer, Dennis K. Poole & Associates, Salt Lake City, for Defendants and Appellants.
Stephen T. Hard, Roger D. Sandack, and Steven E. McCowin, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, for Plaintiff and Appellee.
Before BILLINGS, JACKSON and ORME, JJ.

*638 OPINION
JACKSON, Judge:
Images & Attitude, Inc. (Images) appeals from the trial court's grant of partial summary judgment in favor of Macris & Associates, Inc. (M & A), dismissing Images's fraudulent inducement claim against M & A based on collateral estoppel, and from the trial court's judgment in favor of M & A on the remaining claims. We affirm.

BACKGROUND
Images is a multilevel marketing company which markets health and beauty products. In 1989, Thomas Mower, president of Images, entered into negotiations with Michael Macris, who was acting on behalf of two corporations: Affinity, Inc. (Affinity), a nail system manufacturing company, and M & A, a marketing company. As a result of these negotiations, Images entered into two related contracts: (1) a supply contract with Affinity, under which Affinity was to supply nail gels and lamp housings to Images for use in assembling nail care kits ("Affinity contract"), and (2) a distributorship contract with M & A, under which M & A was to market the nail products in Images's marketing program ("M & A contract"). Under the M & A contract, M & A was "autoqualified," which meant that the usual distributor requirements of the Images marketing plan were waived, and M & A was to be paid at the highest level provided for in the marketing plan without having to meet any of the usual qualifications for being compensated at that level. M & A was to be entitled to autoqualification status as long as M & A was "active in promoting Images and Images products."
A number of disputes then arose between the parties, including disputes over the nail gel Affinity was providing Images, to which several users had developed irritation problems, and over Michael Macris's testing of other nail gels. In March 1991, Images notified M & A that it was discontinuing M & A's autoqualification status for lack of activity. Later in that same month, Images notified M & A that it was considering terminating the M & A distributorship entirely.
In April 1991, M & A filed this action for breach of the M & A contract. Images counterclaimed, asserting, among other things, that M & A breached the M & A contract, that M & A was the alter ego of Macris, and that Macris fraudulently induced Images into entering into the M & A contract.
At about the same time M & A initiated this action, Affinity initiated an arbitration proceeding against Images, alleging breach of the Affinity contract. In May 1992, the arbitrator in that proceeding determined that Images had breached its contract with Affinity and awarded Affinity damages. This arbitration award was entered as a judgment in district court in June 1992. Images then filed a complaint in district court, alleging that it had been fraudulently induced into entering into the Affinity contract and asking that the arbitration award and judgment in Affinity's favor be set aside. In addition, Images filed arbitration proceedings against Affinity, also arguing in those proceedings that it had been fraudulently induced into contracting with Affinity. In November 1993, the arbitrator dismissed Images's fraudulent inducement claim on summary judgment.
Following the arbitrator's dismissal of Images's fraudulent inducement claim against Affinity, M & A moved for summary judgment on the fraudulent inducement claim in this litigation, arguing that Images's fraudulent inducement claim in this case was barred under the collateral estoppel doctrine. The trial court granted M & A's motion for summary judgment on the fraudulent inducement claim.
After a trial on the remaining issues, the trial court entered judgment in favor of M & A. The trial court concluded, among other things, that M & A did not materially breach the contract with Images, but that Images had materially breached the contract by discontinuing M & A's autoqualification status and by failing to pay M & A under the parties' contract. The trial court also concluded that M & A was not the alter ego of Macris. The trial court awarded M & A $360,681.20 plus interest in damages. Images appeals.

*639 ISSUES
On appeal, Images argues that the trial court erred in dismissing its fraudulent inducement claim on the basis of collateral estoppel. Images also asserts that the trial court erred in determining that M & A was not the alter ego of Michael Macris, or that Macris was not the agent of M & A, and that Macris's competitive activities were therefore not attributable to M & A. Finally, Images asserts that the trial court erred in excluding Images's witness, William Crismon, from testifying at trial.

ANALYSIS

I. Collateral Estoppel
Images first argues the trial court erred in dismissing Images's fraudulent inducement claim against M & A on summary judgment. Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Utah R. Civ. P. 56(c). Because summary judgment presents only questions of law, we review the trial court's determinations under a standard of correctness, according no deference to the trial court's legal conclusions. See Cook v. Zions First Nat'l Bank, 919 P.2d 56, 59 (Utah.Ct.App.), cert. denied, 925 P.2d 963 (Utah 1996).
In dismissing Images's fraudulent inducement claim on summary judgment, the trial court concluded that Images was collaterally estopped from relitigating the fraudulent inducement claim against M & A based on the Affinity arbitration proceedings. The court specifically determined that "[c]ollateral estoppel applies to issues decided on summary judgment" and "to issues decided in arbitration proceedings." The court further found that "[t]he issue as to whether Mr. Macris fraudulently induced the Defendants has already been fully and fairly litigated in a prior arbitration proceeding" and "[t]he prior arbitration proceeding found that no fraudulent inducement had occurred."
Collateral estoppel, also referred to as issue preclusion, prevents the relitigation of issues raised, litigated, and resolved in a previous action. "Under this doctrine, the relitigation of factual issues that have once been litigated and decided is precluded even if the claims for relief in the two actions are different, and even if only `the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication.'" Mel Trimble Real Estate v. Monte Vista Ranch, Inc., 758 P.2d 451, 453 (Utah. Ct.App.1988) (citation omitted) (emphasis in original).
The party seeking to invoke the doctrine of collateral estoppel must establish four elements:
First, the issue challenged must be identical in the previous action and in the case at hand. Second, the issue must have been decided in a final judgment on the merits in the previous action. Third, the issue must have been competently, fully, and fairly litigated in the previous action. Fourth, the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous action.
Jones, Waldo, Holbrook & McDonough v. Dawson, 923 P.2d 1366, 1370 (Utah 1996).
On appeal, Images argues the trial court erred in concluding that collateral estoppel applies because: (1) the fraudulent inducement issue in this case is not identical to that decided in the prior proceeding, and (2) Images was not afforded a full and fair opportunity to litigate the issue in the prior proceeding because the fraudulent inducement claim was decided on a motion for summary judgment in that proceeding. Images also asserts the trial court erred in granting summary judgment on the ground of collateral estoppel because, by failing to present the record of the prior proceeding to the trial court, M & A failed to meet its burden below of establishing the elements of collateral estoppel.
We first address Images's argument that the trial court erred in granting summary judgment because M & A did not meet its burden of establishing that collateral estoppel applied in this case. Images specifically asserts that M & A failed to meet its burden below of establishing either that the *640 issue in this case is identical to that of the prior proceeding or that Images had a full and fair opportunity to litigate the issue in the earlier proceeding.
In general, the party asserting collateral estoppel has the burden of establishing the elements of collateral estoppel. See Timm v. Dewsnup, 851 P.2d 1178, 1184 (Utah 1993). Images argues that M & A failed to meet this burden because M & A merely asserted, without providing any evidence to support its assertions, that the elements of the doctrine were met. Images points out that M & A did not offer any transcripts of the arbitration hearing, and did not attach any part of the record from the arbitration proceedings. Therefore, in deciding that the arbitration ruling had preclusive effect, the trial court relied only on the order from the arbitration proceeding, which stated: "Affinity made no misrepresentations of material facts to [Images] to induce [Images] to enter into the Agreement and [Images], in any event, did not reasonably rely on the alleged misrepresentations."
This court has previously considered, in a similar context, the burden a party bears in establishing the elements of collateral estoppel. See Trimble, 758 P.2d at 453-55. In Trimble, the plaintiff, a real estate broker, brought an action to recover a real estate commission from the vendor. See id. at 452. The plaintiff had previously sought unsuccessfully to recover the commission from the property's buyer in a separate action. See id. The defendant moved for summary judgment on a number of grounds, including collateral estoppel, and attached to its supporting memorandum a copy of the Utah Supreme Court opinion affirming the judgment in the prior trial. See id. In granting the motion for summary judgment on the grounds of collateral estoppel, the trial "court relied, as had the parties, exclusively on the Supreme Court's reported decision in the earlier case." Id. at 453.
The plaintiff appealed the trial court's ruling, arguing, among other things, that "the district court should not have looked just to the opinion but should have scrutinized the pleadings and papers in the first action to see what issues were actually litigated and how they were decided." Id. The plaintiff argued that the supreme court opinion was misleading, and that it was "difficult to make a determination that the issue [of whether any commission was owed] was actually litigated and decided from the four corners of the opinion." Id. at 454.
Although we agreed that it was difficult to determine, based only on the supreme court opinion, whether the commission issue was actually litigated and decided in the prior proceeding, we stated:
once [the defendant] submitted to the district court a copy of the Supreme Court opinion, which on its face showed that the key issue had been litigated and decided, the burden shifted to [the plaintiff], if it believed more than the opinion was needed to make a fully informed decision, to produce the record of the prior proceeding, urge the court to take judicial notice of it, or otherwise show that the opinion should not be taken at face value.
Id. at 455. We therefore rejected the plaintiff's argument that the trial court erred in deciding the motion for summary judgment without review of the record from the prior proceeding. See id.
In this case, the trial court relied solely on the arbitrator's order in deciding that Images was collaterally estopped from relitigating its fraudulent inducement claim. On its face, this order showed that the fraudulent inducement issue had been litigated and decided in the prior arbitration proceeding. Images did not argue before the trial court that the order did not sufficiently establish what was actually litigated and decided in the prior proceeding, nor did Images produce the record from the prior proceeding to show that the fraudulent inducement issue was not identical, or that it was not fully litigated in the prior proceeding. Images also did not argue before the trial court that, by failing to present the record from the arbitration proceeding, M & A failed to meet its burden of establishing collateral estoppel.[1] Therefore, *641 we reject Images's argument that the trial court erred in dismissing its fraudulent inducement claim because M & A failed to meet its burden of establishing collateral estoppel before the trial court.
Images next asserts that the trial court erred in concluding that collateral estoppel applied in this case. Images first argues that collateral estoppel does not apply because the fraudulent inducement issue in this case is not identical to that considered in the Affinity arbitration proceedings. Images argues that the issues are not identical because: (1) there were allegedly two additional misrepresentations made to induce Images into contracting with M & A which were not involved in the Affinity contract, and (2) this case involves a different contract  the arbitration proceeding dealt with whether Images was fraudulently induced into the Affinity contract, and not whether Images was induced into the M & A contract. However, we decline to address this "identity of issues" argument because Images did not present this argument to the trial court, and therefore the issue was not preserved for appeal.[2]See In re Estate of Morrison, 933 P.2d 1015, 1017 (Utah.Ct.App.1997).
Images also argues the trial court erred in determining that collateral estoppel applied because the "full and fair litigation" requirement of collateral estoppel was not satisfied. Images asserts that the fraudulent inducement issue was not fully and fairly litigated because the arbitrator decided the issue in the arbitration proceeding on a motion for summary judgment. Images apparently suggests that because the fraudulent inducement issue was decided by the arbitrator on a motion for summary judgment, it was per se not fully and fairly litigated.[3] However, the general rule is that a final judgment pursuant to a motion for summary judgment is given the same collateral estoppel effect as a final judgment following a trial. See, e.g., Carpenter v. Young, 773 P.2d 561, 568 (Colo.1989) (according summary judgment collateral estoppel effect); Bunce Rental, Inc. v. Clark Equip. Co., 42 Wash. App. 644, 713 P.2d 128, 131 (1986) (same).
Apart from asserting that it was not afforded a full and fair opportunity for litigation solely because the arbitrator's determination of its fraudulent inducement claim was decided on summary judgment, Images has not asserted any other basis for concluding that it was actually denied a full and fair opportunity to litigate the issue in the arbitration proceeding. As M & A states, Images has not shown that it was prevented from filing affidavits in opposition to Affinity's motion for summary judgment in the Affinity arbitration, or that it was not allowed to present any arguments before the arbitrator, or that there was any other particular deficiency in the presentation or argument of that summary judgment motion. Thus, we reject Images's argument that it did not have a full and fair opportunity to litigate the fraudulent inducement issue in the prior proceeding. We therefore affirm the trial court's grant of summary judgment on the fraudulent inducement claim based on collateral estoppel.

*642 II. Challenge to Trial Court's Findings
Images next argues the trial court erred in finding that M & A was not the alter ego of Michael Macris, that Macris's competitive activities were not attributable to M & A, and that M & A did not breach the contract by engaging in disruptive and competitive activities. Images further asserts that because these findings of fact are clearly erroneous, the trial court's conclusions of law based on these findings are also in error.
We review the trial court's factual findings for clear error and review the court's conclusions of law for correctness. See Jouflas v. Fox Television Stations, Inc., 927 P.2d 170, 174 (Utah 1996). To challenge the trial court's findings, Images must "`"marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence, thus making them clearly erroneous."'" Interwest Constr. v. Palmer, 923 P.2d 1350, 1358 (Utah 1996) (citations omitted). We will uphold the trial court's findings of fact if the party challenging the findings fails to appropriately marshal all the evidence. See Allred v. Brown, 893 P.2d 1087, 1090 (Utah.Ct.App.1995).
Images specifically challenges twelve of the trial court's findings relating to whether M & A was Michael Macris's alter ego and whether Macris's allegedly competitive activities were attributable to M & A. Images has failed, however, to marshal all the evidence in support of the trial court's findings. Instead, Images asserts that the evidence supporting the court's findings is insufficient because this evidence "consists mainly of the self-serving testimony of Michael Macris," and provides some examples of this testimony. Images then reargues evidence supporting its position. Because Images has failed to marshal the evidence, we assume the record supports the trial court's findings. See Saunders v. Sharp, 806 P.2d 198, 199 (Utah 1991). We therefore do not disturb the trial court's factual findings or its conclusions of law based on the findings. Cf. West Valley City v. Majestic Inv. Co., 818 P.2d 1311, 1315 n. 5 (Utah.Ct.App.1991) ("[T]his is not a case where we are presented with the alternative argument that even if the factual findings withstand appellate review, the court's legal conclusions are in error for other reasons.").

III. Exclusion of Witness
Images finally asserts that the trial court abused its discretion in refusing to allow Images's witness, William Crismon, to testify at trial. The trial court refused to allow this witness to testify because Images failed to disclose this witness before the discovery cut-off date set by the trial court.
In general, "[t]rial courts have broad discretion in managing the cases assigned to their courts," and "[w]e will not interfere with a trial court's case management unless its actions amount to an abuse of discretion." Berrett v. Denver & Rio Grande Western R.R., 830 P.2d 291, 293 (Utah.Ct.App.1992). Further, even if a trial court erroneously excludes a witness, we will reverse only "if the error was prejudicial to the substantial rights of a party." Id.
Images argues that the trial court erred in excluding the witness because the trial court did not impose a deadline for designating witnesses,[4] and because M & A had sufficient *643 notice of the witness and therefore would not have been unfairly prejudiced had the court allowed the witness to testify. However, we need not consider whether the trial court erred in refusing to allow this witness to testify under these circumstances because Images has failed to show that it was prejudiced by the exclusion of the witness's testimony. The only support Images offers in claiming that it was prejudiced is its assertion, without citation to the record, that the witness's deposition testimony "significantly supported Images's breach of contract claim," and its contention that, because M & A contested the issue, M & A was obviously apprehensive about the witness testifying and thus the testimony must have been important to Images's case. This does not sufficiently establish that Images was prejudiced by the exclusion of the testimony, and thus, even if the trial court erred in excluding the testimony, the error was harmless based on the information provided by Images on appeal.

CONCLUSION
Images has not shown that the trial court erred in dismissing, on summary judgment, Images's fraudulent inducement claim based on collateral estoppel. Images also failed to establish that the trial court's findings were against the clear weight of the evidence. Finally, Images failed to show that it was prejudiced by the trial court's exclusion of its proposed witness, William Crismon. Accordingly, we affirm. Each party shall bear its own costs.
BILLINGS and ORME, JJ., concur.
NOTES
[1] Images's failure to raise this issue before the trial court, and therefore to preserve the issue for appeal, provides an additional reason for rejecting this argument. See Mel Trimble Real Estate v. Monte Vista Ranch, Inc., 758 P.2d 451, 455 (Utah.Ct.App.1988).
[2] Images asserts that we should consider this argument because it was plain error for the trial court to have applied collateral estoppel in this case. However, Images has not shown that it should have been plain to the trial court that the issues were not identical. See Davis v. Grand County Serv. Area, 905 P.2d 888, 892 (Utah.Ct. App.1995). Therefore, the plain error doctrine does not apply here.
[3] In support of this argument, Images cites Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp., 784 P.2d 459 (Utah 1989), for the proposition that "where a case is decided on a motion for summary judgment, it is possible that no full and adequate hearing was held." However, Rocky Mountain is inapposite to the facts of this case. Rocky Mountain did not involve a claim of collateral estoppel or a claim that because an issue was decided on summary judgment there was no full and fair opportunity for litigation of the issue. Instead, the Utah Supreme Court was considering in that case whether the city had expressly waived governmental immunity. See id. at 461-64. The court stated that "[i]nasmuch as this case was decided in the trial court on a motion for summary judgment, no full and adequate evidentiary hearing was held to resolve critical facts," and therefore the supreme court did "not have before [it] a record from which" it could determine whether immunity had been waived. Id. at 464.
[4] In arguing the trial court erred in excluding this witness because there was no court-imposed deadline for designating witnesses, Images cites Berrett v. Denver & Rio Grande Western Railroad Co., 830 P.2d 291 (Utah.Ct.App.1992), in which this court held that "absent an order creating a judicially imposed deadline [for witness disclosure], a trial court may not sanction a party by excluding its witnesses under rule 37(b)(2)." Id. at 296 (footnote omitted). In Berrett, we concluded the trial court erred in precluding the plaintiff's expert witness from testifying because the trial court had imposed no deadlines for witness disclosure, but had at most "an unexpressed expectation" that the plaintiff's final witness list would be submitted by a certain date. Id. at 295. We also emphasized that the defendant had agreed that the plaintiffs could disclose their final witness list by August 1 and the plaintiffs submitted their witness list on that date. See id. at 294.

In this case, however, the trial court did impose an order setting a discovery cut-off date of December 1, 1994. In that order, the trial court further stated that "Images shall provide [M & A] with an updated witness list not later than September 16, which witness list may be supplemented thereafter." In addition, unlike Berrett, there is no indication in this case that the parties agreed to another witness disclosure deadline.