2003 UT App 141

**In the Matter of Edwin L. SHEVILLE, a protected person.**

**David Grindstaff and Sandra Sheville Holman, Appellants,**

v.

**Sue Ann Sheville, Appellee.**

**No. 20010642–CA.**

Court of Appeals of Utah.

May 15, 2003.

---

Cameron S. Denning, Hanks Rooker & Denning PC, Salt Lake City, for Appellants.

Kent B. Alderman and Angie Nelson, Parsons Behle & Latimer, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## MEMORANDUM DECISION

BILLINGS, Associate Presiding Judge.

¶ 1 Sandra S. Holman (Holman) appeals the trial court's order finding her and David Grindstaff (Grindstaff) jointly and severally liable for $81,820.41 in costs and attorney fees in a dispute over the guardianship of Holman's father, Edwin Sheville (Edwin).[1] We reverse in part, reverse and remand in part, and affirm in part.

### COSTS

■ ¶ 2 Holman argues that rule 54 of the Utah Rules of Civil Procedure barred the trial court from awarding any costs to Sue A. Sheville (Sheville). Under rule 54, "[t]he party who claims his costs must within five days after the entry of judgment" file and serve a memorandum of costs. Utah R. Civ. P. 54(d)(2). Because Sheville failed to comply with this requirement,[2] the trial court's award of costs must rest on some other authority. *See Lyon v. Burton*, 2000 UT 19, ¶ 77, 5 P.3d 616 ("[F]ailure to satisfy the requirement for filing a verified memorandum of costs is fatal to a claim to recover costs under [r]ule 54.").[3]

¶ 3 Sheville claims section 75–1–310 of the Utah Uniform Probate Code separately authorized the trial court's costs award, regard-

less of rule 54's requirements. *See* Utah Code Ann. § 75–1–310 (1993). However, the trial court did not base its costs award on section 75–1–310, and Sheville raises this argument for the first time on appeal.[4] Although we "*may* affirm" a trial court's ruling on grounds not raised below, *State v. Montoya*, 937 P.2d 145, 149 (Utah Ct.App.1997) (emphasis added), we do not find the record sufficient to properly consider this issue. *See id.* at 149–50 ("The record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal."); *cf. Trimble Real Estate v. Monte Vista Ranch, Inc.*, 758 P.2d 451, 456 (Utah Ct.App.1988) ("Utah courts have consistently followed a policy strongly opposed to the raising of issues for the first time on appeal."). Therefore, we reverse the trial court's award and supplemental award of costs and expenses.

### ATTORNEY FEES

■ ¶ 4 Holman argues the trial court failed to comply with Utah Code Ann. § 78–27–56 (2002) in awarding a wide range of attorney fees to Sheville. "Under section 78–27–56, attorney fees may be awarded 'if the court determines that the action or defense to the action was [i] without merit and [ii] not brought or asserted in good faith.' " *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998) (alterations in original) (quoting Utah Code Ann. § 78–27–56).

■ ¶ 5 As a threshold matter, we conclude it was legal error to find Holman and Grindstaff jointly and severally liable for all of Sheville's attorney fees. Grindstaff was

---

1. David Grindstaff is deceased and not a party to this appeal, as no brief was submitted on his behalf subsequent to his filing a notice of appeal.

2. The trial court entered its order appointing Sheville as permanent guardian on December 19, 2000, yet Sheville did not file a memorandum of costs until January 30, 2001.

3. The five day requirement is a "well-established," blanket rule preventing Sheville from recovering costs pursuant to rule 54. *See Lyon v. Burton*, 2000 UT 19, ¶ 77, 5 P.3d 616; *cf. Classic Cabinets, Inc. v. All Am. Life Ins. Co.*, 1999 UT

App 88, ¶¶ 17–18, 978 P.2d 465 (stating plain error standard and finding plain error where trial court ignored a "well-established rule" when incorrectly assessing attorney fees).

4. The trial court erroneously awarded costs pursuant to Utah Code Ann. § 78–27–56 (2002), which does not deal with the issue of costs. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998) ("[S]ection 78–27–56 ... refers only to attorney fees, with no mention of 'costs' recoverable under the statute.").

hired to represent Edwin's interests, not the interests of Holman, as permitted under section 75-5-303. *See* Utah Code Ann. § 75-5-303 (1993) (stating that "unless the allegedly incapacitated person has counsel of the person's own choice, [the trial court] shall appoint an attorney to represent the person"). The trial court did not find that Grindstaff undertook any efforts to represent Holman's position, and, in fact, it is clear that Holman was represented by counsel other than Grindstaff throughout the proceedings. Nor did the trial court find that Grindstaff had colluded with Holman, a finding that might support the decision to award attorney fees jointly and severally. Thus, we analyze each claim separately.

 ¶ 6 Holman's legal objections to Sheville's guardianship based on Holman's claims that she deserved guardianship over Edwin and that Edwin was competent were without merit and brought in bad faith. Holman contends, for instance, that she "had a reasonable belief that Edwin was capable of making his own decisions," and argued below that Edwin desired to remain in Utah, close to Holman. Given the overwhelming evidence of Edwin's incapacity, those claims are "frivolous" and therefore without merit. *Jeschke v. Willis*, 811 P.2d 202, 204 (Utah Ct.App.1991). Holman also asserted below that she was on equal footing, as an adult child of Edwin, to request legal guardianship of Edwin, and that she was capable of caring for Edwin. Even if Holman was originally on equal footing with Sheville, her well-documented improper behavior, especially in light of Edwin's obvious incapacity before she filed any objections, shows she does not have Edwin's best interest in mind, as required by law. *See, e.g.,* Utah Code Ann. § 75-5-307(1) (1993) (allowing removal of a guardian "if in the best interests of the ward"); Utah Code Ann. § 75-5-304(1) (1993) (providing appointment of a guardian must be "necessary or desirable as a means of providing continuing care and supervision of the incapacitated person").[5] This behavior also supports the trial court's finding of "bad faith." [6] Thus, we affirm the trial court's award of those attorney fees incurred by Sheville to defend against Holman's legal objections concerning Edwin's capacity and Holman's claims for guardianship over Edwin.

 ¶ 7 All other attorney fees granted by the trial court against Holman are beyond the scope of section 78-27-56 and improper. For instance, although Holman's wrongful behavior may have prompted Sheville's petitions for emergency guardianship, such behavior did not amount to legal "action" contemplated by section 78-27-56. *Cf. Faust v. KAI Techs., Inc.,* 2000 UT 82, ¶ 16, 15 P.3d 1266 (noting section 78-27-56 does not extend to a party's legal response to bad faith conduct alone). Similarly, Sheville's attorney

5. We respectfully disagree with the dissent's conclusion that Holman's mere statutory *right* to contest Sheville's guardianship, without any potential for success, prevents a "without merit" finding. "Frivolous" actions are "without merit." *Jeschke v. Willis,* 811 P.2d 202, 204 (Utah Ct.App.1991). Black's law defines a "frivolous action" as a "groundless [action] with *little prospect of success;* often brought to embarrass or annoy the [other party]." Black's Law Dictionary 461 (6th ed.1991) (emphasis added). Here, Holman's assertions regarding Edwin's competency and Holman's claims for guardianship had no prospect of success.

The dissent also insists that bad faith can have no bearing on a "without merit" finding. We disagree. In this instance, Holman's bad faith helps to demonstrate that she does not have Edwin's best interest in mind, *as required by law* for those seeking guardianship. Thus, Holman's bad faith, when combined with Edwin's obvious incapacity, shows that Holman's claim for guardianship was without merit. Conversely, Holman's assertion that Edwin was competent was without merit irrespective of Holman's bad faith.

6. The trial court had reason to conclude that Holman's bad faith and Edwin's obvious incapacity were apparent prior to October 25, 2000, when Holman first objected to Sheville's guardianship of Edwin. The record supports the trial court's conclusion, for instance, that Holman improperly participated in and concealed Edwin's trip from New York to Salt Lake City in early October 2000. Further, in December 1999, Edwin was diagnosed with senile dementia. After examining Edwin in late October and November 2000, another medical doctor testified that Edwin had moderate to severe dementia, and that Edwin could not even remember his recent marriage or how he recently arrived in Salt Lake City. A social worker and gerontologist also opined, after visiting with Edwin in late October 2000, that any lay person spending time with Edwin would identify his profound incapacity and memory disability.

fees for annulling Edwin's marriage and defending Edwin's protective order did not involve Holman as an opposing party, and the trial court did not find Holman colluded with Grindstaff, who was Edwin's attorney, on either matter.[7]

¶ 8 In sum, the trial court erred by "award[ing] wholesale all attorney fees requested" by Sheville without recognizing that much of the fee amount was not recoverable under section 78–27–56. *Valcarce*, 961 P.2d at 315. We remand for a determination and award of only those attorney fees expended by Sheville in litigating Holman's objections to Sheville's guardianship that were based on Holman's claims that she deserved guardianship over Edwin and that Edwin was competent. Further, the trial court must make findings of fact regarding the reasonableness of those specific fees. *See Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998).

¶ 9 I CONCUR: GREGORY K. ORME, Judge.

THORNE, Judge (concurring in part and dissenting in part):

¶ 10 I dissent from the majority's decision to read a good faith threshold into what is an otherwise legally permitted objection, based upon statute, to the appointment of a guardian.

¶ 11 Under Utah Code Annotated Section 78–27–56, attorney fees are awardable only if the action or defense was brought or raised in bad faith *and* the action or defense was without merit. *See id.* § 78–27–56 (2002); *Hermes Assocs. v. Park's Sportsman*, 813 P.2d 1221, 1225 (Utah Ct.App.1991). In this case, I accept the trial court's conclusion that Holman acted in bad faith, and I am in

agreement with the majority on this issue. However, because Holman had a statutory right to contest Sheville's guardianship petition, I cannot agree that her objection was without merit. Thus, I cannot agree with the majority view concerning the propriety of the trial court's award of attorney fees for this issue.

¶ 12 A claim should be deemed to be without merit only if it "is 'frivolous' or 'of little weight or importance having no basis in law or fact.' " *Jeschke v. Willis*, 811 P.2d 202, 203 (Utah Ct.App.1991) (emphasis added) (quoting *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)); *see also Chipman v. Miller*, 934 P.2d 1158, 1162 (Utah Ct.App.1997).[8] The probate code seems to anticipate objections just like that filed by Holman. *See* Utah Code Ann. § 75–5–303 (1993) (setting out the procedure for appointing a guardian for an incapacitated person); *id.* § 75–5–304 (establishing that the court may appoint a guardian if "the appointment is necessary or desirable as a means of providing continuing care and supervision of the incapacitated person"); *id.* § 75–5–309 (establishing notice requirements, including requiring the petitioner to served notice on all adult children of the possibly incapacitated person); *id.* § 75–5–311 (establishing the order of priorities in guardianship proceedings, with adult children of the incapacitated person occupying the second position). Therefore, I do not believe that we can declare Holman's objection to Sheville's guardianship petition meritless.[9]

¶ 13 I further believe that my position is in accord with the traditional posture taken by this court in similar circumstances. *See, e.g., Porco v. Porco*, 752 P.2d 365, 368–69 (Utah

---

7. The trial court merely found, for instance, that "[w]hoever participated in [the protective order] was perpetuating a fraud on the court," and that Holman's general conduct throughout the proceedings was in question.

8. The majority opinion suggests that a finding of bad faith can be the predicate element supporting a finding that a claim or defense was " 'frivolous' " and " 'of little weight or importance.' " *Jeschke v. Willis*, 811 P.2d 202, 203 (Utah Ct.App. 1991) (citations omitted). I find this conclusion inadequately supported by any authority.

9. Nothing in our case law suggests that the likelihood of success is the controlling factor in assessing merit for the purpose of determining sanctions. Rather, the only question we must face is whether success is possible. Here, Holman is an adult child of an incapacitated person who occupies the same priority position as Sheville, the petitioner. Thus, while her actions and behavior certainly suggest she was not likely to succeed in her attempt, her objection to the appointment of her sister as guardian was legally permissible and the trial court needed to rule upon it; thus, her objection was not frivolous.

Ct.App.1988) (stating "[w]e recognize that sanctions for frivolous appeals should only be applied in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions"). I see no reason to limit the application of this logic to cases involving fees under rule 33 of the Utah Rules of Appellate Procedure. By declaring Holman's objection to be meritless merely because it was likely self-serving, we open the door to a possible chilling effect on the filing of meretricious objections to guardianship petitions similar to the chilling effect mentioned in *Porco. See id.* Here, regardless of her motives, Holman objected to the appointment of Sheville as guardian, as permitted under the Probate Code. In doing so, she offered the court a number of alternatives to the appointment of Sheville, ranging from Holman herself to, presumably, the appointment of someone outside the family. I feel it is inappropriate to sanction Holman for following a path laid out by statute and approved by the legislature.

¶ 14 Therefore, although I concur with the bulk of the majority decision, I dissent from its conclusion that Holman's objection to Sheville's guardianship petition was without merit.