**Richard W. RINGWOOD, Plaintiff and Appellant,**

v.

**FOREIGN AUTO WORKS, INC. and Howard R. Francis, Massimo C. Poggio, Rebecca Jane Poggio, Anthony Hernandez and Hugh Gardner, Defendants and Respondents,**

**Massimo "Max" POGGIO and Foreign Auto Works, Inc., Plaintiffs,**

v.

**Hugh GARDNER and Anthony R. Hernandez, Defendants.**

**Richard W. RINGWOOD, Plaintiff and Respondent,**

v.

**FOREIGN AUTO WORKS, INC. et al., Defendants and Appellants.**

**Massimo "Max" POGGIO and Foreign Auto Works, Inc., Plaintiffs and Appellants,**

v.

**Hugh GARDNER and Anthony R. Hernandez, Defendants and Respondents.**

**Richard W. RINGWOOD, Plaintiff and Respondent,**

v.

**FOREIGN AUTO WORKS, INC. et al., Defendants and Respondents.**

**Massimo "Max" POGGIO and Foreign Auto Works, Inc., Plaintiffs and Respondents,**

v.

**Hugh GARDNER and Anthony R. Hernandez, Defendants and Appellants.**

**Nos. 870540–CA, 870541–CA and 870544–CA.**

Court of Appeals of Utah.

Jan. 2, 1990.

Rehearing Denied in No. 870540–CA Jan. 29, 1990.

■■■■■■■■■■■■■■■

**1352**

Dallas H. Young, Jr., Jerry Reynolds, Provo, for appellant and respondent Ringwood.

Val R. Antczak, Julia C. Attwood, Salt Lake City, for appellants and respondents Gardner & Hernandez.

Robert C. Fillerup, Orem, for appellant and respondent Francis.

Lynn C. Harris, Jeril B. Wilson, Provo, for appellants and respondents Poggio and Foreign Auto Works.

Before BILLINGS, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

This appeal arises from the sale of Foreign Auto Works, Inc. (FAW) an auto sales and service business. Richard W. Ringwood (Ringwood), Howard R. Francis (Francis), and Rebecca Jane and Massimo "Max" Poggio (Poggio) were the owners of all the issued FAW stock. Ringwood agreed to sell his stock to Poggio and Francis. Poggio subsequently bought Francis's stock and sold FAW to Hugh Gardner (Gardner) and Anthony R. Hernandez (Hernandez). Ringwood brought an action against Francis and Poggio for breach of contract and against Hernandez and Gardner, claiming to be a third party beneficiary of their contract with Poggio. Poggio filed a separate action for breach of contract against Gardner and Hernandez. The two actions are consolidated and tried together. The court found Francis and Poggio liable for breach of their agreement with Ringwood but dismissed Ringwood's claim against Hernandez and Gardner. The court also rendered judgment for Poggio against Gardner and Hernandez. Hernandez and Gardner's counterclaim against Poggio and FAW was dismissed with prejudice. All parties appealed.

## FACTS

Ringwood, Francis, and Poggio were owners of all the FAW issued stock, 50,000 shares. FAW was engaged in operating Mazda and Fiat franchises and selling parts for and repairing Mazdas and Fiats.

In October 1978, the owners negotiated a sale of Ringwood's 15,000 shares to Francis and Poggio. This agreement was formalized in a promissory note obligating FAW, Poggio, and Francis to pay Ringwood $100,000 at a rate of at least $20,000 per year with interest to accrue at 10.5% annually. On November 8, 1978, FAW, Ringwood, Francis, and Poggio executed a new agreement that included most of the same terms as in the promissory note, but also contained a merger provision. This agreement prohibited Francis and Poggio

from selling the stock or assets of FAW without Ringwood's prior written approval. By October 1979, Francis and Poggio were delinquent in their payments to Ringwood. Poggio then purchased all of Francis's shares and became the sole owner.

On November 27, 1979, Poggio contracted to sell the FAW stock to Gardner and Hernandez. The same parties executed a new agreement on December 29, 1979, which excluded the sale of FAW's real property. Both agreements included provisions for full payment to Ringwood and specified 10.5% per annum interest on amounts to be paid to Poggio.

On February 8, 1980, a new agreement was again executed changing the transaction from a sale of FAW stock to a sale of FAW's assets. No interest rate on the purchase price was specified. Dinero Services, Inc. (Dinero), a corporation formed and owned by Hernandez and Gardner, was designated as the sole buyer. This agreement did not contain any provision for the buyer to assume Poggio's obligation to Ringwood.

In April 1980, Poggio and Dinero Services, Inc. executed their final agreement. This agreement was executed because a condition precedent in the February contract had not occurred and a dispute had arisen over the assets' value. It contained an indemnity agreement that required Poggio to indemnify the "seller" [sic] for any amounts Dinero might be required to pay Ringwood, including attorney fees. Again, no interest rate was set forth.

Ringwood had filed a prior lawsuit on January 29, 1980, claiming Poggio and Francis had breached the October 1978 promissory note. Because Ringwood did not base his claim on the November 8 agreement, which the court found controlling, the court dismissed Ringwood's claim with prejudice. This decision was affirmed in *Ringwood v. Foreign Auto Works, Inc.*, 671 P.2d 182 (Utah 1983).

Ringwood filed the complaint leading to this appeal on February 4, 1985, basing his claim against Poggio and Francis on the November 8 agreement. Ringwood included Gardner and Hernandez as defendants, claiming he was a third party beneficiary of their agreement with Poggio and that he was damaged by their breach of that agreement. Ringwood claimed Poggio and Francis failed to make payments required by the November agreement; that they breached the agreement by selling FAW's assets; and that they acted with malicious intent to deprive Ringwood of his interests.

Poggio then filed a complaint against Gardner and Hernandez for breach of their November 27, 1979 agreement. After the court found the April 1980 agreement was controlling, Poggio amended his complaint, basing his claims on the April agreement.

The court found that res judicata did not bar Ringwood and that Poggio and Francis were liable to Ringwood for breach, but that there was no malicious intent. The court also awarded Poggio judgment against Hernandez and Gardner personally, rather than against Dinero, with interest to accrue at the legal rate, finding that the controlling contract did not specify an interest rate. The court allocated expense and income damages from April 14, 1980, the date of the closing, instead of February, when Hernandez and Gardner took possession of FAW.

With respect to Ringwood's claims against Gardner and Hernandez, the court found Ringwood was not a third party beneficiary but only an incidental beneficiary under the controlling agreement, and dismissed the claim with prejudice. The trial court also found there was insufficient evidence to find that Poggio or FAW was insolvent when the contract with Hernandez and Gardner was entered into.

Ringwood appeals the court's finding that he is not a third party beneficiary. He argues further that the April 14 agreement could not release Gardner and Hernandez from their obligation to him.

Poggio appeals the court's ruling that Ringwood's claim was not barred by res

judicata and that interest would accrue on his judgment against Gardner and Hernandez at the legal rate. Also, with respect to the court's finding on allocation of income and expense damages, Poggio argues he should be liable for those damages only to February 8, 1980, when Gardner and Hernadez took control of FAW, not April 14, 1980, the closing date specified in the last agreement.

Gardner and Hernandez claim the court erred in finding that Poggio's amended complaint relates back to his original complaint, thus allowing Poggio to bring a claim six years after the initial breach on August 8, 1980, after expiration of the applicable statute of limitations.

The court denied Gardner and Hernandez attorney fees because there was no showing of the necessity or reasonableness of the fees requested. Gardner and Hernandez claim on appeal that a showing of reasonableness is unnecessary under an indemnity agreement.

## RINGWOOD'S CLAIMS

Ringwood raises two arguments on appeal. First, he claims the court erred in finding he was not a third party beneficiary, but only an incidental beneficiary of the contract between Poggio and Gardner and Hernandez. Second, in related arguments, Ringwood urges that Poggio's release of Gardner and Hernandez from their obligation to pay him was ineffective because (1) he had vested rights by virtue of Gardner and Hernandez's exercise of control over FAW, (2) Poggio was insolvent at the time of the release, and (3) there was not fair consideration for the April agreement.

### Third Party Beneficiary

The court found that Ringwood was an intended third party beneficiary under the first two contracts between Poggio and Gardner and Hernandez, but that Ringwood did not rely upon, assent to, nor file an action based on either of those contracts

prior to the time they were superceded by the February and April 1980 agreements. The court further found that Ringwood was intended to be an incidental beneficiary only of the February 8, 1980 and April 14, 1980 agreements.

"Generally, the rights of a third-party beneficiary are determined by the intentions of the parties to the subject contract." *Tracy Collins Bank & Trust v. Dickamore*, 652 P.2d 1314, 1315 (Utah 1982). Moreover, "[f]or a third-party beneficiary to have a right to enforce a right, the intention of the contracting parties to confer a separate and distinct benefit upon the third party must be clear." *Hansen v. Green River Group*, 748 P.2d 1102, 1105 (Utah Ct.App.1988) (quoting *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980)). An incidental beneficiary is defined as a "person who will be benefited by the performance of a contract in which he is not a promisee, but whose relation to the contracting parties is such that the courts will not recognize any legal right in him." *Schwinghammer v. Alexander*, 21 Utah 2d 418, 446 P.2d 414, 415 (1968).

In this case, the contracts of November and December expressly obligated Gardner and Hernandez to assume Poggio's obligation to Ringwood. However, these agreements were superceded by the February agreement and ultimately by the April agreement, both of which lacked any requirement that Gardner and Hernandez assume the obligation to Ringwood, but explicitly obligated Poggio to satisfy the obligation. Because Gardner and Hernandez did not expressly assume the obligation as they had in the earlier agreements, and because Poggio expressly agreed to satisfy his obligation to Ringwood, it is clear that the parties no longer intended Ringwood as a third party beneficiary. Gardner and Hernandez have cited the Restatement (Second) of Contracts for the proposition that parties may modify duties to a third party beneficiary under some circumstances, as follows:

(1) Discharge or modification of a duty to an intended beneficiary by conduct of

the promisee or by a subsequent agreement between promisor and promisee is ineffective if a term of the promise creating the duty so provides.

(2) *In the absence of such a term, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement.*

(3) Such a power terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee.

Restatement (Second) of Contracts § 311 (1981) (emphasis added). Although no Utah cases have expressly adopted this language, we find it applicable to the facts of this case. As found by the trial court, Ringwood did not rely upon nor change his position because of the rights as a third party beneficiary afforded him in the first two contracts, nor did he file an action based on those rights. Therefore, the parties were free to terminate Ringwood's rights in the later, superceding contracts. The April agreement clearly does not give Ringwood third party beneficiary status. As a result, the trial court did not err in concluding Ringwood was not a third party beneficiary to the April agreement.

### Fraudulent Release

■ Ringwood also argues that the rescission of his rights under the earlier agreements was fraudulent and, therefore, invalid, because Poggio did not receive fair consideration for the release and because Poggio was insolvent. To support his contention, Ringwood primarily relies on the Second Restatement of Contracts, which states, "a promise for the benefit of a creditor of the promisee is an asset of the promisee. A release of the promisor may be a fraud on the beneficiary or on other creditors of the promisee if the promisee is insolvent and the release is made without fair consideration...." Restatement (Second) of Contracts § 311 comment i (1981).

The court's findings state that there was insufficient evidence to find that either Poggio or FAW was insolvent. The court also found that there was fair consideration for the April 1980 agreement. We review the trial court's findings in accordance with Utah R.Civ.P. 52(a), and will not reverse unless the findings are clearly erroneous.

Evidence was presented as to Poggio's debts, including tax debts and the amounts owed to Ringwood. However, no evidence was admitted concerning the value of FAW, retained by Poggio under the agreements, nor of the Fiat franchise, which he retained until 1982. Poggio also testified that he owned a painting, valued in excess of $100,000. No competent evidence was presented to invalidate that valuation. We find sufficient evidence to support the court's finding that Poggio's insolvency was not established. Similarly, the court's finding of fair consideration for the April 1980 agreement is supported by Poggio's testimony regarding amounts he was to receive under the agreement and as reflected in the agreement itself.

■ Finally, Ringwood cites *Bracklein v. Realty Ins. Co.*, 95 Utah 490, 80 P.2d 471 (1938) to support his novel theory that he had a vested third party interest because of Gardner and Hernandez's exercise of dominion and control over FAW's assets. *Bracklein*, however, concerns a grantee of mortgaged property who was in privity of contract with the mortgagee through an assumption clause. Ringwood was not in privity with Gardner and Hernandez and, therefore, *Bracklein* is inapplicable. Also, Gardner and Hernandez took possession of FAW after the February agreement was executed and after Ringwood's third party beneficiary rights had been extinguished. Therefore, Ringwood is not restored to third party rights by use of this theory.

### POGGIO'S CLAIMS

On appeal, Poggio claims that the trial court erred (1) by concluding that Ring-

wood's claims against him under the November 1978 agreement were not barred by res judicata; (2) in ruling that the legal rate of interest applied to the amount owed him by Gardner and Hernandez; and (3) allocating costs and expenses from the date of closing rather than from when Gardner and Hernandez took over FAW.

### Res Judicata

Poggio claims the court incorrectly concluded that the doctrine of res judicata did not operate to preclude Ringwood's second complaint against him. Prior to analyzing the applicability of res judicata, however, we consider an evidentiary question raised by ◆Ringwood. Ringwood asserts that there was no evidentiary basis for a determination that res judicata barred his action, because no evidence was offered or admitted as to the prior proceeding. We have examined the record, and determined that there are no exhibits in the trial court proceedings consisting of records of the prior litigation, nor were any requests for judicial notice of those proceedings made on the record.

Ringwood cites the case of *Parrish v. Layton City Corp.*, 542 P.2d 1086 (Utah 1975) as supporting his position. In *Parrish*, defendant claimed that plaintiff's action was barred by res judicata because a prior similar action had been dismissed. The trial court's grant of summary judgment to defendant was reversed by the Utah Supreme Court, stating that "[a] survey of the record reveals that defendant never submitted a copy of the pleadings and judgment" from the prior action. *Id.* at 1087. The court found that "[s]ince the record of the prior action was not before the trial court, there is no basis to sustain the determination that plaintiff's claim was barred by the doctrine of res judicata." *Id.*

Application of *Parrish* was addressed by this court in *Trimble Real Estate v. Monte Vista Ranch*, 758 P.2d 451 (Utah Ct.App. 1988), *cert. denied*, 769 P.2d 819 (Utah 1988). In a prior action, Trimble had sued

Fitzgerald, a buyer, for a real estate commission. The trial court found against him and the supreme court affirmed the decision. Trimble then brought a second action for the same commission against Monte Vista Ranch, seller of the property, which raised the defense of res judicata. The trial court dismissed the action on the basis of res judicata and Trimble appealed. On appeal, Trimble, relying on *Parrish*, asked for reversal because the trial court did not have before it the records of the prior proceeding, but only the supreme court decision, which was attached to a memorandum in support of defendant's motion for summary judgment. The *Trimble* court found *Parrish* distinguishable, noting that in *Parrish*, the trial court had no record at all of the prior proceeding, and thus "had absolutely no basis for determining the res judicata issue." *Id.* at 455. The court further found that Trimble had consented to the trial court's reliance on the opinion and that

> once Monte Vista submitted to the district court a copy of the Supreme Court opinion, which on its face showed that the key issue had been litigated and decided, the burden shifted to Trimble, if it believed more than the opinion was needed to make a fully informed decision, to produce the record of the prior proceeding, urge the court to take judicial notice of it, or otherwise show that the opinion should not be taken at face value.

*Id.* Trimble, however, had not taken any of those actions but had merely argued the meaning of the opinion in the prior action. *Id.* As a result, this court held that Trimble consented to the trial court's use of the opinion alone as a basis for its ruling. In addition, the trial court was able to infer from the opinion what had been adjudicated in the prior action and conclude that the present action was barred by collateral estoppel. *Id.*

In this case, from our reading of the record, it is not clear whether or not the trial court actually examined the trial court

proceedings in the former action.[1] It is clear, however, that the trial court examined the supreme court opinion. Not only was it referred to in some detail in memoranda and motions of counsel, but was also detailed in the court's rulings, which demonstrate the court's familiarity with the opinion. Throughout the course of the trial court proceedings, counsel and the court referred to and argued the meaning of the supreme court opinion in the context of the res judicata claim. At no point did Ringwood object to reliance on the opinion or move for admission of the former action's trial court proceedings. Therefore, as in *Trimble*, there was no error in utilizing the opinion only to determine the applicability of res judicata.

■ The next question is whether there needed to be explicit admission of the opinion into evidence or taking of judicial notice.[2] Judicial notice serves as a substitute for the taking of evidence. 29 Am.Jur.2d *Evidence* § 14 (1967). Therefore, since the opinion was not admitted into evidence, it is sufficient if judicial notice was taken. Pursuant to Utah R.Evid. 201(c), the court has discretion to take judicial notice without request by counsel. In this case, the trial court reserved ruling on the res judicata issue until after the supreme court opinion was issued. Thereafter, it referred to the opinion in detail when rendering its decision and the findings of fact and conclusions of law entered include particulars from the opinion. It is clear that the trial court had carefully read the opinion and ruled on the res judicata issue on the basis of its interpretation of the opinion, with no objection by the parties. We, therefore, conclude that the court took judicial notice of the opinion and utilized the opinion as

the evidentiary basis for its decision on the issue of res judicata.[3]

■ We now turn to the question of whether the trial court correctly concluded that Ringwood's claim under the November 8 agreement against Poggio was not barred by res judicata. Claim preclusion is a branch of the doctrine of res judicata which has three requirements for its application:

First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988). Therefore, the result in the prior action constitutes the full relief available to the parties on the same claim or cause of action. *Trimble*, 758 P.2d at 453. In contrast to the claim preclusion branch of res judicata, issue preclusion, or collateral estoppel, requires that the issue in question was competently, fully, and fairly litigated in the earlier action. *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 389 (Utah Ct.App.1987). Claim preclusion applicability, however, requires that the claim, even though not decided in the prior action, could and should have been litigated, but was not raised by any of the parties. *See Bradshaw v. Kershaw*, 627 P.2d 528 (Utah 1981). This "reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Restatement (Second) of Judgments § 24 comment a (1982).

■ The findings of the trial court in this case indicate that, in the prior action,

---

1. There are, however, indications that the court may have examined the proceedings. For example, the court said it wanted to look at the file of the former action when the supreme court was through with it, and at one point, counsel for Poggio stated he had the summons and complaint from the former action.

2. *Trimble* does not address this question, although it appears that the supreme court opin-

ion was neither admitted as evidence nor afforded official judicial notice on the record.

3. We note, however, as does *Trimble*, that it would be preferable for counsel to have provided a copy of the trial court proceedings and the supreme court opinion, and either had them admitted as exhibits or requested judicial notice.

the trial court ruled that the October promissory note merged into the November 8 agreement and that ruling was affirmed by the Utah Supreme Court. The trial court herein concluded that the prior decision was "not a decision on the merits of Ringwood's claims for the sale of his stock and such decision is not res judicata so as to preclude Ringwood from pursuing claims under the Agreement of November 8, 1979." We do not defer to the trial court's conclusions of law, and in this case, find that the court erred in concluding that res judicata did not bar Ringwood's claim against Poggio. Both the October promissory note and the November agreement concerned Poggio's purchase of Ringwood's stock.[4] The court in the prior action determined that the October note was nullified by merger into the November agreement so that Ringwood could not assert a claim under the October note. Since Ringwood failed to assert a claim under the November agreement either initially or by amendment to his complaint, the case was properly dismissed. Obviously, a claim by Ringwood under the November agreement could have been decided in the prior action, as the agreement was extant and was in default. The only reason it was not decided was because Ringwood failed to raise the claim. The trial court apparently held that res judicata did not apply because Ringwood's claim for payment for his stock under the November agreement was not litigated. However, the reason the claim was not litigated was solely because of Ringwood's failure to assert the claim. The other requirements of res judicata are also met, as the parties are the same and the first action resulted in a final judgment on the merits.[5] Therefore, we find that res judicata bars Ringwood's claims against

Poggio and Francis, and reverse the judgment granted Ringwood.

### Legal Rate of Interest

■ Poggio appeals the court's application of the then legal rate of interest, 6%, to the balance of the purchase price owed by Gardner and Hernandez. Poggio admits that the April agreement is silent on the interest rate, but contends, however, the interest rate should be inferred to be 10.5% as was specified in the previous agreements that were superceded.

Poggio presented no evidence at trial of an intent to incorporate a 10.5% interest rate into the April agreement. The court found that the parties intended the April agreement to supercede and replace all prior agreements. We defer to the trial court's findings as to the parties' intentions. *Seashores Inc. v. Hancey*, 738 P.2d 645, 647 (Utah Ct.App.1987). The court's finding is supported by substantial evidence. Furthermore, the prior agreements merged into the April agreement which clearly does not specify an interest rate. Utah law provides that the legal rate is applicable in instances where the parties have not agreed on a specified rate. Utah Code Ann. § 15–1–1 (1986). We, therefore, conclude that the court did not err in awarding interest at the legal rate on Poggio's judgment against Gardner and Hernandez.

### Allocation of Income and Expense Liability

■ Lastly, Poggio appeals the trial court's allocation of income and expense damages as of the date of closing rather than the earlier date when Gardner and Hernandez took possession of FAW. This

---

**4.** The supreme court opinion states: "In 1978, Mr. Ringwood and FAW agreed with the defendants, Mr. and Mrs. Poggio and Mr. Francis, that the defendants would purchase Ringwood's shares for $100,000, and the defendants signed a promissory note in October, 1978 for that amount. Subsequently, on November 8, 1978 the parties entered into a written agreement for the sale and purchase of the stock." *Ringwood*

*v. Foreign Auto Works, Inc.*, 671 P.2d 182, 182 (Utah 1983).

**5.** The fact that the prior action was dismissed with prejudice does not nullify res judicata application, as such constitutes litigation on the merits. Utah R.Civ.P. 52(a); *Steiner v. State*, 27 Utah 2d 284, 495 P.2d 809 (1972).

issue was not raised in the trial court and, hence, cannot be considered for the first time on appeal. *Burgers v. Maiben,* 652 P.2d 1320, 1322–23 (Utah 1982); *James v. Preston,* 746 P.2d 799, 801 (Utah Ct.App. 1987).

## GARDNER AND HERNANDEZ'S CLAIMS

Gardner and Hernandez contend the trial court erred (1) by finding them personally liable under the April agreement; (2) in ruling that Poggio's amended complaint related back to his original complaint; (3) in its calculation of the amount owed by them to Poggio; and (4) in denying them attorney fees.

### Personal Liability

■ Gardner and Hernandez appeal the trial court's conclusion that they are personally liable under the April agreement. They argue that the court ignored the corporate form without finding Dinero was their alter ego and, consequently, unjustifiably pierced the corporate veil.

The corporate form protects shareholders from personal liability and will be pierced by the courts with great reluctance and caution. *Colman v. Colman,* 743 P.2d 782, 786 (Utah Ct.App.1987). In order to disregard the corporate entity,

> two circumstances must be shown: (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter-ego of one or a few individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity.

*Id. See also Salt Lake City Corp. v. James Constructors,* 761 P.2d 42, 46 (Utah Ct.App.1988). One of the factors deemed significant in determining whether this test has been met is the use of the corporation as a facade for operations of the dominant stockholder. *Colman,* 743 P.2d at 786. At the beginning of trial, the court stated that

Gardner and Hernandez were personally liable under the April agreement and the trial proceeded with that ruling in place. The court found that Gardner and Hernandez were the real parties in interest, that they were intended as parties to the agreement, and that "Dinero Services Inc. was not considered by the parties as an operative entity as far as the dealings between the parties were concerned." These findings are supported by the evidence, especially considering the history of transactions in this matter, and meet the required legal criteria for piercing the corporate veil. Therefore, the court did not err in holding Gardner and Hernandez personally liable to Poggio under the April agreement.

### Relation Back

■ Gardner and Hernandez appeal the court's conclusion that Poggio's amendment to the complaint, filed on October 16, 1986, relates back to his original complaint, filed on May 3, 1982, and was, thus, not barred by the statute of limitations. Poggio's last amended complaint was for the purpose of basing his claim against Gardner and Hernandez on the April agreement. Gardner and Hernandez argue that the earlier pleadings did not place them on notice that Poggio would base his action for breach of contract on the April agreement.

■ Under Utah R.Civ.P. 15(a), leave to amend pleadings "shall be freely given when justice so requires." Utah R.Civ.P. 15(c) states, "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence, set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Relation back is allowed under the rules even if a statute of limitations has run during the intervening time. *Meyers v. Interwest Corp.,* 632 P.2d 879 (Utah 1981). In considering motions to amend pleadings, primary considerations are whether parties have adequate notice to meet new issues and whether any party receives an unfair advantage or disadvan-

tage. *Lewis v. Moultree*, 627 P.2d 94, 98 (Utah 1981). *See also Vina v. Jefferson Ins. Co.*, 761 P.2d 581, 587 (Utah Ct.App. 1988).

In this case, Poggio's claim in his amended complaint is based on essentially the same transaction as was the original complaint: the purchase of FAW and/or its assets by Gardner and Hernandez and their alleged failure to perform under the operative contract between the parties. In addition, Gardner and Hernandez asserted repeatedly in the trial court proceedings, that the agreements under which Poggio had previously sought to recover had been superceded and filed a memorandum in support of a motion for partial summary judgment against Poggio, arguing the April agreement was controlling. This memorandum was filed three months before Poggio filed his amendment. Because the amendment was based on a similar claim arising out of the same general transaction, and because Gardner and Hernandez were aware, within the period of the statute, that the April agreement was superceding, Gardner and Hernandez had adequate notice of the claim and were not prejudiced by the amendment. The subject matter of the April agreement arose from the same basic dealings as the prior agreements between the same parties and the amendment alleging breach of the April agreement related back to the original filing and was not barred by the statute of limitations. Therefore, the court did not err in concluding that the amendment related back.

## Amount of Liability to Poggio

■ Gardner and Hernandez claim the court erred in determining the amount owed Poggio. Specifically, they claim the court erred in calculating the amount they actually paid under the April agreement. Gardner testified that he actually overpaid approximately $12,000. To the contrary, Poggio testified that there was still an outstanding balance. Based on this testimony and other evidence, the court granted judgment to Poggio for $20,330.27, as the balance owed on the purchase price.

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...." Utah R.Civ.P. 52(a). Particularly, the court's award of damages will be affirmed on appeal, "if there is a reasonable basis in evidence" to support it. *Holman v. Sorenson*, 556 P.2d 499, 500 (Utah 1976); *Gillmor v. Gillmor*, 745 P.2d 461, 462 (Utah Ct.App.1987), *cert. denied*, 765 P.2d 1278 (Utah 1988); *Katzenbach v. State*, 735 P.2d 405, 409 (Utah Ct.App.1987). Moreover, "[t]he trial court as a trier of fact is free to assess the credibility of the witnesses, and a conflict in evidence alone is not grounds for reversal. We will not upset findings, so long as they are supported by substantial record evidence." *Chandler v. Mathews*, 734 P.2d 907, 909 (Utah 1987). Although evidence of the amount actually paid was conflicting, the trial court's finding is based on substantial evidence and is not clearly erroneous.

## Attorney Fees

■ Finally, Gardner and Hernandez appeal the court's denial of attorney fees. The April agreement provided that Poggio would indemnify Dinero "from any and all claims and loss ... including attorneys' fees" arising from claims made by Ringwood. Gardner's testimony that $6500 in attorney fees had been paid to defend against Ringwood's claims was the sole evidence offered to support the claim for attorney fees. The trial court denied the request for fees on the basis that there was no evidence presented to show that the fees were reasonable or necessary, or the nature of the work done. Gardner and Hernandez argue such evidence is unnecessary because the request is made pursuant to an indemnity agreement and not an attorney fees clause. To support this argument, they cite *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059 (Alaska 1978). However, in *Heritage*, the Alaska Supreme Court found attorney fees were recovera-

ble as falling within an implied right of indemnification clause, but did not hold that there was no requirement of a showing that the fees were reasonable. We see no basis for distinguishing a request for attorney fees under an indemnity provision from a request under an attorney fee provision. "Attorney fees awarded pursuant to contract or statute are usually those found by the court to be 'reasonable,' unless the statute or contract provides otherwise." *Canyon Country Store v. Bracey*, 781 P.2d 414, 420 (Utah 1989). Furthermore, "[i]t is well established that to justify a finding of a reasonable attorney's fee, there must be evidence in support of that finding.... It is beyond dispute that an evidentiary basis is a fundamental requirement for establishing an award of attorney fees." *Barnes v. Wood*, 750 P.2d 1226, 1233 (Utah Ct.App.1988) (quoting *Paul Mueller Co. v. Cache Valley Dairy Ass'n*, 657 P.2d 1279, 1287 (Utah 1982)). The trial court was, therefore, correct in denying the request because there was no showing the fees requested were reasonable.

Affirmed in part, and reversed as to the judgment entered in favor of Ringwood against Poggio.

GARFF and ORME, JJ., concur.