John W. JARMAN and Helene B. Jarman, Plaintiffs and Appellees,

v.

REAGAN OUTDOOR ADVERTISING CO., Defendant and Appellant.

No. 890106–CA.

Court of Appeals of Utah.

June 11, 1990.

Douglas T. Hall, Salt Lake City, for defendant and appellant.

Don R. Schow, Jon C. Heaton, and Ronald E. Nehring (argued), Prince, Yeates & Geldzahler, Salt Lake City, for plaintiffs and appellees.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant Reagan Outdoor Advertising Co. (Reagan) appeals the trial court's decision interpreting its lease contract with appellees John W. and Helene B. Jarman (the Jarmans). We affirm.

In 1971, Galaxy Outdoor Advertising negotiated two separate leases of property adjacent to State Highway 224 with the owners of Hi–Ute Ranch in Summit County. Subsequently, Galaxy built two outdoor advertising structures, or signs, on this property. In 1980, when the Jarmans purchased the subject property, the two signs were already in place adjacent to the east side of the highway, which runs north and south. State-owned road maintenance shops are located adjacent to the west side of the highway. One sign was situated opposite the south end of the road shops, while the other sign was situated approximately another three hundred feet south.

In 1982, Reagan, Galaxy's successor in interest, renewed the lease agreement for the two structures with the Jarmans. The parties executed a lease agreement, which replaced the two previous lease documents. They used essentially the same property descriptions as in the previous lease documents for the location of the signs: the first sign was located at "State Highway 224, across from state highway sheds south of Kimball Junction" and the second at "State Highway 224, 300 feet south of state highway shed, south of Kimball Junction." [1]

In 1987, after acquiring a ten to thirty foot right-of-way from the Jarmans, the State of Utah began widening State Highway 224. This right-of-way included a portion of the property upon which the two advertising structures were located. The State requested that Reagan move the signs off the right-of-way. Without permission from the Jarmans, Reagan did so, moving them several feet to the east so that they were no longer on the right-of-way but were completely located on the Jarman property. This relocation required only a minimal change, however, because only part of the structures needed to be moved in order to comply with the State's request.

---

**1.** The 1971 leases described the locations as follows:

(1) one location across from state road shed on highway, and

(2) one location 300 feet south of state road shed on highway.

On December 10, 1987, shortly after the signs were relocated, the Jarmans initiated this action seeking removal of the structures.

A bench trial resulted in a judgment in favor of the Jarmans. Reagan was ordered to remove the structures. The court reasoned that the 1982 lease was ambiguous and, therefore, parol evidence was admissible to determine the intent of the parties. It then found that the parties' intent was to authorize the placement of the signs only at the exact location on which they were situated at the time the Jarmans executed the lease and, thus, Reagan was trespassing, even though the signs were moved only a few feet.

Reagan asserts that the original general description of the structures' locations found in the 1971 leases and incorporated in the 1982 lease still describes their present locations. It, therefore, raises the following issues on appeal: (1) Did the trial court correctly determine that the 1982 lease was ambiguous, and (2) if the contract was ambiguous, were the trial court's findings of fact supported by the evidence?

## AMBIGUITY

■ We first must determine whether the lease descriptions for the location of the signs were ambiguous. Whether an ambiguity exists in a contract is a question of law which we review for correctness. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988). The trial court found that an ambiguity exists as to the intended location of the signs. We agree.

■ "Where questions arise in the interpretation of an agreement, the first source of inquiry is within the document itself. It should be looked at in its entirety and in accordance with its purpose. All of its parts should be given effect insofar as that is possible." *Regional Sales Agency, Inc. v. Reichert*, 784 P.2d 1210, 1213–1214 (Utah Ct.App.1989) (quoting *Big . Cottonwood Tanner Ditch Co. v. Salt Lake City*, 740 P.2d 1357, 1359 (Utah Ct.App.1987)). "Language in a written document is ambiguous if the words used may be understood to support two or more plausible mean-

ings." *Whitehouse v. Whitehouse*, 790 P.2d 57, 61–62 (Utah Ct.App.1990).

Both signs were originally located on the east side of Highway 224, one being approximately opposite the state road shed, which is on the west side, and the other about 300 feet south of the first sign. When Reagan relocated the signs, it moved them approximately fifteen feet east, but with one of the support legs still within the bounds of the original location. A careful reading of the lease agreement indicates, however, that the location of the second sign is to be 300 feet south of the state highway shed, which would place the sign on the west side of the highway. The record does not indicate whether the Jarmans own the property on the west side of the highway but, obviously, the second sign was not located pursuant to the description in the lease.

Additionally, the descriptions in the lease are vague and indefinite as to where the signs could be relocated. The lease provides that "[i]f lessor builds or develops on the property where the sign(s) is situated" the lessor may terminate the lease. However, "[i]f any portion of the property is not utilized for such buildings, lessee has the option to use the remaining portion on the same terms." Although it could be argued that, in order to have any commercial value to Reagan, the signs were intended by the parties to be placed alongside the highway, the wording of the lease still leaves much speculation as to what the "remaining portion" is and exactly where and how far within the boundaries of the Jarmans' 103 acres the signs could be relocated.

Since two or more plausible meanings can be derived from the wording, the trial court did not err when it found the contract to be ambiguous and when it accepted parol evidence to determine the intent of the parties. "If the document, itself, is ambiguous, then parol evidence may be used in arriving at an interpretation." *Redevelopment Agency of Salt Lake City v. Daskalas*, 785 P.2d 1112, 1118 (Utah Ct.App. 1989); *see also Power Sys. & Controls,*

*Inc. v. Keith's Elec. Constr. Co.,* 765 P.2d 5, 9–10 (Utah Ct.App.1988).

## SUFFICIENCY OF THE EVIDENCE

Reagan next argues that there was insufficient evidence for the trial court to find the parties intended the lease to limit the location of the signboards to their exact, existing locations.

■ The intent of the parties is a factual determination. This court will not reverse a trial court's findings on factual issues unless they are clearly erroneous. *Bess v. Jensen,* 782 P.2d 542, 544 (Utah Ct.App. 1989). Further, " 'The burden [on appellants] of overturning factual findings is a heavy one, reflective of the fact that we do not sit to retry cases submitted on disputed facts.' We give great deference to the trial court's findings, especially when they are based on an evaluation of conflicting live testimony." *Terry v. Price Mun. Corp.,* 784 P.2d 146, 147 (Utah 1989) (per curiam) (quoting *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989)).

We also note that:

It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made. To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view.

*Kintner v. Harr,* 146 Mont. 461, 408 P.2d 487, 494 (1965) (citation omitted).

■ At the time the Jarmans entered into the lease agreement with Reagan, the two signs were already positioned in specific locations, even though the lease still retained the same descriptions as drafted in the original lease prior to the construction of the signs. Jarman testified that, when he executed the lease, he intended the two signs to be located exactly where they were. The lease provides that if the property is sold, the buyer has a right to terminate the lease within thirty days and the lessee must remove its signs if requested. The Jarmans maintain that this is exactly what happened when the State acquired the property, so Reagan had no right to move the signs back onto their property. Jarman stated that he did not intend to give Reagan the option to move those signs anywhere on his property and, if he sold the property, as he did to the State for the right-of-way, he intended to terminate the lease.

On the other hand, Terry Reid, vice president and general manager for Reagan, and the person responsible for drafting the lease agreement with its property descriptions, testified that he understood the signs could remain on the property until the Jarmans had totally developed the property and he could move the signs as necessary to maintain that use.[2] He relied on the part of the lease which specified that if the lessor builds or develops on the property where the signs are situated, the lessee has the option to use the remaining portion on the same terms.

Richard Paxman, an employee of Reagan who had previously worked for Galaxy Advertising, also testified. He had negotiated the original lease with the prior owners of the property. He testified, in effect, that the descriptions in the first leases were general because the location of the signs had not been specifically determined, but once the signs were in position, they defined the locations agreed upon.

In its findings of fact, the trial court determined that the initial two leases negotiated by Galaxy Advertising authorized

---

**2.** Reid stated that it was his intent to work out an agreement whereby they

could keep the signs next to the highway and if he built or developed—well, we realized that if he came up with another use for the property that was more economically profitable for him, that at that point in time it might come about that we might have to remove the

signs. But until that happened, or if he only developed part of it, or whatever, that we would like to have the ability to stay on the property until he had totally utilized the property.... My understanding is that if part of it were developed and a piece was left undeveloped, that you could relocate the sign.

the placement of the signs on specific sites which were the same locations occupied by the signs at the time the present parties executed the existing lease, and that the parties intended the lease to continue Reagan's right to maintain the signs only in their existing locations. Although the evidence is controverted, "we assume that the trial judge believed those aspects of the evidence and the inferences reasonably drawn from them that support his decision." *Redevelopment Agency,* 785 P.2d at 1122 (quoting *Brixen & Christopher, Architects v. Elton,* 777 P.2d 1039, 1042 (Utah Ct.App.1989)). Under our standard of review, we will not set aside a trial court's findings unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made, *Smith v. Linmar Energy Corp.,* 790 P.2d 1222, 1224–1225 (Utah Ct.App.1990), and we give deference to the trial court's findings and its opportunity to judge the credibility of the witnesses. Utah R.Civ.P. 52(a).

Having examined the record, we conclude that the trial court's findings have adequate evidentiary support and are not clearly erroneous. We, therefore, affirm its judgment.

BILLINGS and ORME, JJ., concur.