Leon SPROUSE, Plaintiff,

v.

Arjen W. JAGER, Nada H. Jager, Artie Edmunds, Lloyd Walters, and John Does I through V, Defendants.

Roy N. LARSEN, Artie Edmunds, and Interwest Commercial Properties, Third–Party Plaintiffs and Appellees,

v.

Leon SPROUSE, Third–Party Defendant and Appellant.

No. 890642–CA.

Court of Appeals of Utah.

Feb. 7, 1991.

Fred D. Howard and Leslie W. Slaugh (argued), Howard, Lewis & Petersen, Provo, for appellant.

John L. Miles (argued), St. George, for appellees.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant, Leon Sprouse appeals a judgment awarding $24,239.46 plus twelve percent interest and attorney fees to appellees Roy N. Larsen, Artie Edmunds, and Interwest Commercial Properties. This amount represents the commission owed on the sale of Sprouse's motel to Arjen W. Jager. The issue on appeal is whether the trial court erred in determining that Sprouse is personally liable to pay a real estate commission, twelve percent interest, and attorney fees to appellees when the purchaser of the motel subsequently defaulted.

## FACTS

Sprouse was the owner of the Oasis Motel in St. George, Utah. Working through Artie Edmunds, a real estate sales agent for Interwest Commercial Properties (ICP), he sold the motel to Arjen W. Jager. Jager offered, and Sprouse agreed to accept, several trade properties for the motel. An Earnest Money Sales Agreement was then drawn up. This agreement reflected the fact that Jager was being allowed $85,000 for the trade properties with a balance of $390,000 remaining to be paid on the contract. Sprouse would not sign the agreement until the section relating to the commission was changed from a six percent commission of $28,500 to a flat fee of $25,000.

At the closing, the Earnest Money Sales Agreement was replaced by a Uniform Real Estate Contract (UREC or Contract), prepared by James Ivins, an attorney and owner of Meridian Title Company. Ivins also prepared a document entitled, "Note/Agreement/Assignment" (NAA). The NAA is the primary focus of the controversy in this appeal. The Note portion is for the $25,000 real estate commission at 10.5% interest. Interest on any installment paid after it became due is set at twelve percent. There is also an acceleration clause in the event of default. The Assignment portion grants a $25,000 interest in the motel to ICP as security for the Note. Finally, the Agreement portion sets forth that Sprouse is not personally obligated on the Note and that his obligation arises only out of those payments received by the escrow company, Heritage Thrift & Loan (Heritage). This document has a signature blank for Sprouse only, and his is the only signature appearing on it.

The Tuesday after the closing, April 2, 1985, ICP assigned the NAA to Edmunds.

Jager took possession of the motel on April 1, 1985. He made his payments on the Contract regularly until May 1986. A portion of each of the payments had been applied to the real estate commission. At the time Jager stopped making payments, the remaining principal balance of the $25,000 commission was $19,226.80.

Sprouse began an action for forfeiture of Jager's interest under the UREC. Edmunds, who was not yet a party to the action, filed an affidavit claiming an interest in the property. Sprouse then amended his complaint to seek judicial foreclosure of all interests inferior to his vendor's interest under the UREC, and named Edmunds and others as additional defendants. Jager and Edmunds each asserted a counterclaim against Sprouse. Jager asserted a cross-claim against Edmunds and Edmunds cross-claimed against Jager.

Sprouse then proceeded to foreclose against Jager, electing the remedy under the Contract which provides for Heritage to proceed with the foreclosure. A judgment and decree of foreclosure was ultimately entered against Jager. The property was sold back to Leon Sprouse at a sheriff's sale on December 10, 1987 for his bid of $360,000. Sprouse never paid these funds to the county clerk, as ordered by the Decree of Forfeiture, nor did he pay the funds to Heritage. Instead, he "credited" the funds against the amount owed him by Jager.

After trial on appellees' commission claim held July 1, 1988, the court eventually entered its Reinstated Findings of Fact and Conclusions of Law and Reinstated Judgment on July 12, 1989.

The court found that, while there was a consent to a deferred payment of the commission fee, Sprouse was obligated to pay the balance owing on the commission of $24,239.46 plus twelve percent interest and a reasonable attorney fee of $9,000.

Sprouse appeals the award of the commission fee, the interest, and the attorney fees.

## UNIFORM REAL ESTATE CONTRACT

The issue before us is whether the court erred in finding that the parties intended, and the contract required, that Sprouse pay the real estate commission after Jager had defaulted. Two standards of review apply in an appeal involving the interpretation of a contract. "Whether an ambiguity exists in a contract is a question of law which we

review for correctness." *Jarman v. Reagan Outdoor Advertising Co.*, 794 P.2d 492, 494 (Utah Ct.App.1990). "Questions of intent as determined by extrinsic evidence are questions of fact to be decided by the trier of fact and are subject to the 'clearly erroneous' standard of review." *Fitzgerald v. Corbett*, 793 P.2d 356, 358 (Utah 1990); Utah R.Civ.P. 52(a).

We note that "the burden on appellants of overturning factual findings is a heavy one, reflective of the fact that we do not sit to retry cases submitted on disputed facts. We give great deference to the trial court's findings, especially when they are based on an evaluation of conflicting live testimony." *Jarman*, 794 P.2d at 495 (quotations and citations omitted). "[A] conflict in evidence alone is not grounds for reversal." *Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1360 (Utah Ct.App.1990) (quoting *Chandler v. Mathews*, 734 P.2d 907, 909 (Utah 1987)).

The settled rule for interpreting a contract is to first "look to the four corners of the agreement to determine the intentions of the parties. The use of extrinsic evidence is permitted only if the document appears to incompletely express the parties' agreement or if it is ambiguous in expressing that agreement." *Ron Case Roofing & Asphalt, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989) (citations omitted); *John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987).

■ In the present case, the two documents at issue are the UREC and the NAA. Where there are several documents, the contract "should be construed so as to give effect to the parties' intentions, and such intent should be determined, if possible, by examining the written agreement executed by the parties. When agreements are executed substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized, if possible." *Verhoef v. Aston*, 740 P.2d 1342, 1344 (Utah Ct.App.1987) (citations and quotations omitted). Further, in a case where the contract has the potential to be severed, we first look to the intent of the parties and "if this results in uncertainty, [a trier of fact] may and should look to extraneous evidence concerning the background and surrounding circumstances in order to make that determination." *Thomas J. Peck & Sons, Inc. v. Lee Rock Products, Inc.*, 30 Utah 2d 187, 515 P.2d 446, 448 (1973).

■ In his effort to show that the lower court clearly erred in finding him personally liable for the commission fee, Sprouse points to the following paragraph in the NAA:

> The parties hereto understand and agree that this instrument does not obligate the undersigned to personally pay the amounts set forth herein. The obligation for payment hereunder arises only out of the payments received by Heritage under the Unif[or]m Real Estate Contract referred to above.

Even though no one but Sprouse signed the NAA, Sprouse contends that this paragraph reflects the intent of the parties. He presented the following evidence to support this contention: Ivins testified that, in a telephone conversation, Edmunds told him to structure the NAA so that Sprouse would have no personal liability for the real estate commission if Jager defaulted. Sprouse testified that, prior to signing the Earnest Money Sales Agreement, he and Edmunds agreed that Sprouse's payment of the commission fee was contingent on Jager performing his obligations under the UREC. He further testified that Edmunds agreed to include a provision to that effect in the final closing documents.

Sprouse argues that the "great weight" of the evidence goes against the court's finding that he is personally liable for the commission fee. Sprouse offered his own testimony and that of Ivins and Larsen on this issue. Ivins's testimony was equivocal and Larsen's dealt only with the deferred nature of the commission payments and did not specifically address the contingent nature of the payments.

In contrast, appellees' evidence showing that the parties never intended to relieve Sprouse of personal liability on the commis-

sion was extensive. Larsen, the broker, testified that he never agreed to forego the commission in the event of default and that he never authorized Edmunds to make such an agreement. Claudia Ashby, an expert witness and president of the Washington County Board of Realtors, Director of the Utah Association of Realtors, testified that, while some ten percent of real estate closings involve deferral of commission payments, she had never seen an agreement where the obligation to pay a deferred commission was conditioned upon the buyer's payments. Edmunds's testimony disputed that of Sprouse. Edmunds denied that he orally agreed with Sprouse as to Sprouse's personal liability for the commission. Ivins testified that, in a telephone conversation with Edmunds, Edmunds told him that the commission fee should be "secured by the motel." Ivins testified that, after the telephone conversation, Edmunds sent him a note reiterating the basic terms of the commission payment. In this handwritten note, received into evidence, Edmunds wrote that the commission fee should be secured by the motel. Edmunds wrote nothing about a relief of liability in the event of default.

Appellees' evidence raises doubt as to whether the NAA was among the documents signed at the closing on Friday, March 29, 1985. Ivins testified that the NAA was one of the closing documents, that it may have been one of the last documents handled at the closing, and that Edmunds may not have had a complete set of documents at the closing. However, the date on the NAA is April 1, 1985, while the date on all the other closing documents is March 29, 1985. Larsen testified that the NAA was delivered to his office after the closing. Moreover, while the former document was signed by all pertinent parties, only Sprouse signed the NAA.

The trial court concluded that the Note and Assignment portions of the NAA were binding on Sprouse while the Agreement portion was not binding on appellees because they did not sign the document and because they never manifested any intent to enter into the terms of the Agreement.

The court made ample findings to support this conclusion. The court noted that the Earnest Money Sales Agreement obligated Sprouse to pay a commission of $25,000 at the time of closing. Because Sprouse accepted trade properties from Jager as a partial payment for the motel, the court found that no funds were available at the time of closing to pay the commission. As a result, the parties, as an accomodation to Sprouse, orally consented to a deferred payment of the commission. Also, the amount of the commission was not to be based *only* on those funds received by the escrow agent.

The court found, independent of the Earnest Money Sales Agreement and the NAA, that Sprouse was liable for the commission when be obtained a judgment against Jager in the amount of $472,473.40, which amount included the real estate commission fee. By this action, Sprouse acknowledged his liability for the commission. Additionally, when Sprouse elected the UREC remedy of having Heritage proceed with the foreclosure, he became obligated to pay the full amount of his $360,000 bid to Heritage. "The obligation for payments hereunder arises only out of the payments received by Heritage under the Unif[or]m Real Estate Contract...." Thus, the Agreement portion of the NAA, pointed to by Sprouse to relieve him of personal liability, instead, *requires* his liability because it invokes the requirement that the commission fee be paid out of the payments received by Heritage under the UREC, which includes the $360,000 amount paid to Heritage by Sprouse.

Although the evidence is conflicting, that alone is not grounds for reversal. We find no clear error in the court's finding that the parties intended that Sprouse be personally liable for the commission fee. Indeed, the court included findings which were well supported by the evidence to support such a conclusion.

## LIEN ON PROCEEDS OF FORECLOSURE SALE

Appellant seeks to vacate the portion of the judgment granting Edmunds a lien on

the proceeds from the foreclosure sale. This lien stems from the court's finding that Sprouse gave appellees an assignment of a $25,000 interest in the UREC when Sprouse signed the NAA.

■■■ "In Utah, a provision of a contract is severable depending on the intent of the parties at the time they entered into the contract. This intent should be ascertained first from the four corners of the instrument itself, second from other contemporaneous writings concerning the same subject matter, and third from the extrinsic parol evidence of the intentions." *Parents Against Drunk Drivers v. Graystone Pines Homeowners Assoc.*, 789 P.2d 52, 56 (Utah Ct.App.1990) (citations and quotations omitted). Extraneous evidence as to circumstances surrounding the execution of an agreement is also important. *Id.* If extraneous evidence still leaves the intentions uncertain, any ambiguous term or provision should be construed against the drafter. *Id.*

The assignment portion of the NAA sets forth an assignment of a $25,000 interest in the UREC by Sprouse to ICP:

> [Sprouse] hereby sells, assigns and sets over to INTERWEST COMMERCIAL PROPERTIES a $25,000.00 interest as security for the payments set forth above in and to that certain Uniform Real Estate Contract dated March 29, 1984 by and between Leon Sprouse, Seller, and Arjen W. Jager, Buyer, covering the Oasis Motel.

Sprouse argues that the NAA should not be binding as to the assignment. He claims that, even if it were binding, it is ineffectual because the entire $360,000 bid on the motel went toward the amount owed him by Jager. Thus, no proceeds remained to which Edmunds's lien could attach.

Appellees claim that the UREC was freely assignable and that the parties intended that there be an assignment to secure the note for the commission fees. On cross-examination, Ivins did not deny his testimony that he remembers Edmunds instructing him, by telephone, to structure the NAA to relieve Sprouse of personal liability for the commission fee. However, in support of appellees' position, he testified that Edmunds told him the commission fee would be secured by the motel. This testimony is corroborated by Edmunds's handwritten note, received by Ivins after the telephone conversation. The note supports every paragraph of the NAA except the critical paragraph purporting to relieve Sprouse of liability. In particular, the note indicates that the commission fee is to be "$25,000 to be carried at 10.5% for 4 yrs amortization—Secured by motel." The telephone call was on March 14, 1985. The note was received after that conversation, and closing occurred on March 29, 1985.

The court heard the proffered testimony of Mrs. Sprouse to the effect that there would be an assignment to secure the commission with "the right to stand in the shoes of Mr. Sprouse and foreclose." The court also had before it the Judgment and Deed of Foreclosure ordering that "the proceeds of said sale shall be paid over to the Clerk" to be distributed only by court order "following an adjudication of claims" in Jager's counterclaim and "claims existing between [Sprouse] and [Edmunds]." Thus, the court had previously recognized Edmunds's potential right to share in the proceeds of the sheriff's sale.

■■■ The court held that "the 'note' and 'assignment' portions of [the NAA] is binding on [Sprouse] and obligates [him to pay the commission] and secures those obligations by a partial assignment of the Arjen Jager Uniform Real Estate Contract." Sprouse claims that it was clear error for the court to use a piecemeal application of the NAA and to apply the Note and Assignment portions but not the Agreement portion. He argues that the NAA was an "entire" contract and not "severable," and that the distinction between the two depends on the intent of the parties. In assessing intent, we rely on the trier of fact. In resolving a conflict in evidence, we defer to the trial court, which is in a better position to judge the credibility of those testifying and to weigh the evidence. Utah R.Civ.P. 52(a). We find no error in the court's finding the NAA to be severable. Even if the court chose not to sever

the NAA, it still stands as evidence of the parties' intent to secure the commission fee. Accordingly, the court made no clear error in relying on the evidence supporting its grant of a lien on the proceeds from the sale to Sprouse.

## EDMUNDS'S PRIORITY IN INTEREST

■ Sprouse argues that, even if this court finds that Edmunds has an interest in the proceeds from the sale, his interest should not take priority over that of Sprouse. He argues that his "credit bid" of $360,000 for the foreclosed property should be credited against Jager's obligation to Sprouse. According to Sprouse's logic, there were no proceeds upon which a lien could attach.

Appellees argue that, because Sprouse received full value for the $25,000 assignment, that is, a buyer willing and able to purchase the motel, and because he was obligated to pay the money on closing, Edmunds should be given priority. They dispute Sprouse's "credit bid" because it violates the terms of the Judgment and Decree of Foreclosure ordering Sprouse to pay the proceeds of the sale to the county clerk to be distributed "only by further order" of the court in adjudicating the various claims, including that of Edmunds. They note that the sale was noticed to be for "the highest and best bidder *for cash,* lawful money of the United States." (Emphasis added.) They also claim that the "credit bid" violates the terms of the UREC which require Sprouse to pay the proceeds over to Heritage, which, in turn, pursuant to the NAA, would apply the funds to the commission fee.

Appellees also argue that the parties intended that Edmunds's claim take priority. This intent is evidenced by the fact that the commission payments were amortized over a four year period while Sprouse's interest was amortized over a twenty-five year period.

The lower court adopted this last argument in its findings:

The Court finds that none of the commission was paid at the closing because there were no funds available at closing as [Sprouse] had agreed to accept equity in traded properties as Ar[j]en Jager's $85,000.00 down payment.

The Court finds that [Larsen, Edmunds, and ICP], at [Sprouse's] request, orally consented to a deferred payment of the commission merely to accommodate [Sprouse] by providing a convenient mode or method of payment, as the funds to pay the commission were not available at the closing.

. . . .

[The parties] manifested their intent that the commission should be paid in full long before the Uniform Real Estate Contract with Mr. Jager was paid in full. ... The Court finds that under these circumstances where the intent was to pay the commission first, it is equitable to apply the $360,000.00 proceeds of the Sheriff's sale first to the commission, and the balance to the retained interest of defendant.

These findings, supported by the evidence, in turn support the court's conclusion that the parties intended that the commission be given priority over Jager's, and later Sprouse's, interest in the motel. Again we find no clear error in the court's conclusion, and we so affirm.

## INTEREST

■ Sprouse also appeals the trial court's award of twelve percent prejudgment interest, arguing that the twelve percent interest is supported only by the NAA. Again, his argument is that the NAA should be upheld in all respects or not at all. He argues that, absent the provisions of the NAA, there is no interest rate specified on the contract, and therefore Utah Code Ann. § 15–1–1(2) (Supp.1990) would control, allowing for a statutory interest of ten percent.

Appellees argue that Edmunds is entitled to twelve percent interest on the judgment because it was included in the Decree of Foreclosure and because Sprouse refused to pay the proceeds into court or to allow Edmunds his share.

The lower court found that the "note" portion of the NAA was binding and that it "obligates [Sprouse] to pay twelve (12%) percent interest on the commission." The court also found that appellees were "entitled to a judgment for said balance of $24,239.46 and that the judgment should carry interest at the rate of twelve (12%) percent per annum from July 1, 1988 until paid."

Again, the lower court provided ample findings, supported by the evidence as well as by the previous Decree of Foreclosure, to support its conclusion that Sprouse should pay twelve percent interest on the judgment from July 1, 1988 until paid.

## ATTORNEY FEES

Finally, Sprouse claims that the award of attorney fees is not supported by the evidence because there was no testimony as to the reasonableness of the fees. He argues that, even if the fees were determined to be reasonable, the evidence established that Edmunds was entitled to recover, at most, a fee of only $3,000. He bases that amount on a breakdown given by appellees' attorney, John L. Miles. Miles proffered that he spent at least 150 hours on the case and that his hourly fee was sixty dollars an hour, totaling $9,000. He estimated that one-third of his time was spent defending Sprouse's counterclaim, one-third asserting appellees' rights to participate in the foreclosure, and the remaining one-third collecting on the Note portion of the NAA. Sprouse argues that the award of attorney fees was grounded in the NAA, which should not be applied piecemeal.

Appellees argue that the award of attorney fees is supported by the Earnest Money Sales Agreement, by the NAA, and by the UREC because of Edmunds's $25,000 interest. They point out that Sprouse did not object to the proffer regarding attorney fees, nor did he raise any objection as to attorney fees in trial or in his written closing arguments. Therefore, he should not be allowed to raise the issue for the first time on appeal. However, a minute entry, dated March 14, 1989, shows Sprouse did object to the $9,000 attorney fee award. But Miles, on behalf of Edmunds, objected to the fee being reduced to $3,000, as suggested by Sprouse, because Edmunds prevailed on all three claims, thus justifying the $9,000 award. Appellees also request that attorney fees be awarded on appeal.

The court found that the Note and Assignment portions of the NAA obligate Sprouse to pay the expenses of collection, including a reasonable attorney fee. The court also found that paragraph B of the General Provisions of the Earnest Money Sales Agreement provides that any defaulting party is obligated to pay all costs and expenses, including a reasonable attorney fee which may arise from enforcing the agreement. The court thus found two independent grounds for attorney fees. Noting that appellees prevailed on the counterclaim, the foreclosure, and the collection, the court then found that "a reasonable attorney's fee in this matter is $9,000.00, based upon evidence that [appellees'] attorney devoted in excess of 150 hours at an hourly rate of $60.00 per hour, which rate the Court finds reasonable."

We agree that an award of attorney fees must be based on evidence in the record supporting the award. *Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1361 (Utah Ct.App.1990); *Regional Sales Agency, Inc. v. Reichert*, 784 P.2d 1210, 1215 (Utah Ct.App.1989). The trial court has discretion in determining reasonable attorney fees, and, absent an abuse of discretion, we will not overturn such an award. *Regional Sales Agency*, 784 P.2d at 1215. Although the minute entry is somewhat sketchy, it appears that Sprouse's objection is not to the number of hours or to the hourly rate, but rather it is to the fact that the court failed to separate out two-thirds of the attorney time that Sprouse considered to be irrelevant because it did not pertain to the NAA. However, the court was satisfied that, because appellees prevailed on the counterclaim, the foreclosure, and the collection, they were entitled to the full amount. Because these complex issues were so intertwined, we find the court acted within its discretion in its award of attorney fees.

Finally, appellees, having prevailed below, and again here, request attorney fees for the cost of appeal. Because appellees were required to defend their position on appeal at their own expense and because their position was based on a contractual provision allowing for attorney fees, we follow the rule established in *Management Services Corp. v. Development Assocs.*, 617 P.2d 406, 408–09 (Utah 1980) and followed more recently in *Dixon v. Stoddard*, 765 P.2d 879, 881 (Utah 1988) and award attorney fees for the cost of appeal. We remand for the purpose of awarding a reasonable attorney fee.

## CONCLUSION

We find no clear error in the trial court's conclusion. That conclusion was supported by findings which, in turn, were well supported by the evidence. We therefore affirm and remand the issue of the award of appellees' attorney fees on appeal to the trial court to determine a reasonable amount.

JACKSON, J., concurs.

ORME, Judge (concurring in the result in part and dissenting in part):

With the exception of minor aspects of the awards of interest and attorney fees, and, apparently, of the extent of Edmunds' security interest in the UREC, I see the ultimate resolution of this appeal essentially as my colleagues do. But primarily because I fail to see the contractual ambiguity which is the lynchpin of the majority's analysis, I reach that result by a different route.

I see no ambiguity in the key provision of the NAA and thus cannot agree that the trial court was entitled to consider extrinsic evidence of what the parties intended or that this court should defer to the findings made upon consideration of that evidence. Moreover, in accepting the assignment of the benefits under the NAA, Edmunds acceded to all of the terms of the NAA, as a matter of law, even though he did not sign it. He cannot enforce the parts he likes and claim he is not bound by the rest. If unhappy with its terms, his remedy was to refuse the assignment until the document was revised to correspond with his understanding of the parties' agreement concerning the commission.

The key provision of the agreement, with my emphasis, is as follows:

The parties hereto understand and agree that this instrument *does not obligate the undersigned to personally pay the amounts set forth herein.* The obligation for payment hereunder arises *only out of the payments received by Heritage under the Unif[or]m Real Estate Contract* referred to above.

The provision is crystal clear in insulating Sprouse from personal liability for the unpaid commission reflected in the note portion of the NAA. The provision, with equal clarity, restricts the source of payment on the note to amounts paid by the purchaser under the UREC.

That is the good news for Sprouse. The bad news is that the NAA, while contemplating installment payments on the commission obligation, does not put UREC payments in excess of the amount needed to satisfy current commission installments forever beyond Edmunds' reach. Rather, the NAA unambiguously makes Sprouse's liability for the commission co-extensive with payments received under the UREC. Since Sprouse received more than the amount of the commission in UREC payments, the commission obligation could be fully satisfied out of those payments. Thus, Sprouse cannot take refuge behind the "no personal liability" provision of the NAA. Edmunds' judgment for unpaid commissions should, in my view, be sustained on this basis.

As to Edmunds' security interest in the UREC and its proceeds, once again the NAA is unambiguous. The NAA grants such a security interest in favor of, ultimately, Edmunds. However, the security interest is capped at $25,000. The foreclosure sale "proceeds" are chargeable to the extent of $25,000 to satisfy Edmunds' lien. While I otherwise see no problem in Sprouse utilizing a credit bid approach to purchase the property—it would be silly to

make him come up with hundreds of thousands of dollars just so he could pay himself—the $25,000 on which Edmunds had first claim had to be paid in cash.

From what I have said, it will be no surprise that I believe the rate of prejudgment interest was unambiguously set in the NAA at 10.5% absent default and 12% after default. Moreover, the only relevant attorney fee provision is in the NAA. The earnest money agreement was superceded by the UREC so its attorney fee provision is of no effect. Edmunds is not a party to the UREC and the mere fact he had a security interest in payments made under the UREC does not mean he can claim substantive contractual rights, such as an entitlement to attorney fees, under the UREC. Edmunds is, accordingly, entitled to recover attorney fees only insofar as attributable to collection of amounts due him under the NAA. As I see it, the one-third of the $9,000 fee attributable to "asserting appellee's rights to participate in the foreclosure," i.e., to seeking enforcement of the lien given in the NAA, as well as the one-third allocated to "collecting on the Note portion of the NAA," are covered by the NAA's attorney fee provision. Staving off Sprouse's counterclaim is not and the third of attorney fees attributable to that effort is not recoverable.

I would affirm the determination that Edmunds is entitled to his commission with prejudgment interest as provided in the NAA. I would remand to permit fine-tuning of the judgment to adjust the interest as necessary; to limit Edmunds' lien in the UREC proceeds to the $25,000 amount clearly provided for in the NAA, the balance to be the subject of a personal judgment against Sprouse; to require that the portion of the foreclosure purchase price in which Edmunds has a lien, i.e., $25,000, be paid by Sprouse in cash as a condition of delivery to him of a sheriff's deed; and to reduce the trial court's attorney fee award to $6,000. As Edmunds prevailed on appeal and the only issues here were ones within the scope of the NAA fee provision, I take no issue with remanding for assess-ment of all attorney fees reasonably incurred by Edmunds on appeal.